IN RE INTEREST OF J. K. (a minor) : J. K., Appellant, v. STATE, Respondent.

*No. State 59. Argued April 10, 1975.—Decided May 6, 1975.*
(Also reported in 228 N. W. 2d 713.)

For the appellant there were briefs by *James D. Rudd,* Legal Aid Society of Milwaukee, and *Robert H. Blondis,* Milwaukee Legal Service, and oral argument by *Mr. Rudd.*

For the respondent there was a brief by *Victor A. Miller,* attorney general, *Robert D. Martinson,* assistant attorney general, *E. Michael McCann,* district attorney, and *Frank J. Crisafi,* assistant district attorney, and oral argument by *Thomas J. Balistreri,* assistant attorney general.

A brief amicus curiae was filed for the Wisconsin Civil Liberties Union by *Moria Krueger* and *Ralph A. Kalal* of Milwaukee.

ROBERT W. HANSEN, J. Challenged here is not the adjudication of delinquency, but rather the disposition

made by the juvenile court judge following the adjudication of delinquency. The challenge goes to the statutory provisions for disposition if a child is adjudged delinquent, and, more particularly, the application of such statutory provisions in the instant case.

Involved are two sections of the Children's Code of Wisconsin (ch. 48). The first such is sec. 48.01, Stats., which declares the intent of the chapter to be ". . . to promote the best interests of the children of this state, . . ."[1] and provides that ". . . The best interests of the child shall always be of paramount consideration, but the court shall also consider the interest of the parents or guardian of the child and the interest of the public." [2] The second section involved, sec. 48.34 (1), enumerates the possible alternatives available to the juvenile court upon finding a child to be delinquent, providing in material part:

"48.34 **Disposition if child adjudged delinquent.** (1) TYPE OF DISPOSITION. If the court finds that the child is delinquent, it shall enter an order making one of the following dispositions of the case:

"(a) Counsel the child or his parents, guardian or legal custodian; or

"(b) Place the child under supervision in his own home under conditions prescribed by the court including reasonable rules for his conduct and the conduct of his parents, guardian or legal custodian, designed for the physical, mental and moral well-being and behavior of the child; or

"(c) Relieve the parent, guardian or legal custodian of legal custody of the child and place him in a foster home as described in s. 48.62, except that the home does not have to be licensed if the child is placed there for less than 30 days;

"(d) Transfer legal custody of the child to one of the following:

"1. A relative of the child; or

"2. A county agency specified in s. 48.56 (1); or

[1] Sec. 48.01 (2), Stats.

[2] Sec. 48.01 (3), Stats.

"3. A licensed child welfare agency; or
"4. The department;
". . ." [3]

Appellant notes that transfers of legal custody to the state department of health and social services are "until the age of 18," [4] and claims constitutional infirmity in such commitment to the department for institutional placement for an indeterminate period which may extend ". . . beyond the sentence permissible for an adult as punishment for the equivalent crime." [5] This argument equates institutional placement under the Children's Code with incarceration of an adult offender under the Criminal Code.[6] Such exact and complete analogizing of proceedings in the children's court with proceedings in the criminal courts was early rejected by this court.[7] More

[3] Sec. 48.34 (1) (a), (b), (c), (d), Stats., continuing with and completed by pars. (e), (f) and (g).

[4] Sec. 48.34 (3), Stats., providing: ". . . All transfers of legal custody to the department . . . shall be until the age of 18 unless the department discharges the child sooner under s. 48.53."

Sec. 48.53, Stats., provides:

"(1) All children adjudged delinquent, whose legal custody has been transferred to the department, shall be discharged as soon as the department determines that there is a reasonable probability that it is no longer necessary either for the rehabilitation and treatment of the child or for the protection of the public that the department retain legal custody."

[5] Brief of Appellant, page 5. NOTE: An adult convicted of possessing LSD is guilty of a misdemeanor punishable by a fine of not more than $250 or one year imprisonment in county jail. Sec. 161.41 (3), Stats.

[6] Chs. 939 to 948, Stats.

[7] *In re Alley* (1921), 174 Wis. 85, 91, 92, 182 N. W. 360, this court holding: ". . . This law [the Children's Code] was not designed as a method of punishment for crimes committed by juveniles. Every section and paragraph of the statute is permeated with the benevolent purpose of improving the child's condition and not with punishing his past conduct. The whole object and purpose of this law will be defeated if it is construed and applied as a punitive statute."

recently, we stated: "The juvenile law is not to be administered as a criminal statute," [8] and, very recently, held:

". . . Due process and fair treatment are to mark juvenile proceedings as well as adult trials. Both have a common harbor, the fair and just disposition of matters before the court, but they may sail by different routes to the shared destination. Each must avoid the reefs of constitutionally assured protections, but they need not sail side by side in so doing. Any analogy established between steps in juvenile proceedings with stages in the processing of criminal cases may be arguably persuasive, but it is not controlling." [9]

If the state legislature were to eliminate incarceration as an appropriate penalty for the adult crime of possession of LSD, that would not limit or change the right of a juvenile court judge to place an adjudged delinquent, found to have possessed LSD, in the custody of the state department until the age of eighteen, unless earlier released. Such commitment of a juvenile is not for the purpose of penalty or punishment, but for the purpose of effecting a result that will serve the best interests of the child, its parents and the public. The same measur-

---

[8] *Winburn v. State* (1966), 32 Wis. 2d 152, 158, 145 N. W. 2d 178, this court holding: "The entire philosophy of the Children's Code is avowedly the antithesis of criminal prosecution.

". . .

"The juvenile law is not to be administered as a criminal statute, and the rules of criminal procedure are not to be engrafted upon the Children's Code. . . ."

Citing *Kent v. United States* (1966), 383 U. S. 541, 86 Sup. Ct. 1045, 16 L. Ed. 2d 84, and finding it to hold that, while hearings in children's court must measure up to the essentials of due process and fair treatment, they need ". . . not conform with all of the requirements of a criminal trial or even of the usual administrative hearing . . . ." (*Id.* at page 161.)

[9] *In re D. M. D. (a minor) v. State* (1972), 54 Wis. 2d 313, 317, 195 N. W. 2d 594.

ing stick does not apply to both adult criminals and juvenile delinquents.

As to application of the statutory provisions for disposition to this appellant, adjudged delinquent, the principal argument of the appellant is that the juvenile court judge did not sufficiently satisfy himself ". . . that no less onerous disposition would serve the purpose of the commitment." The language quoted and test come from federal court decisions dealing with the civil commitment of persons adjudged mentally ill to a mental hospital for treatment.[10] This argument seeks to equate, exactly and completely, the purpose of commitment and the status of a child adjudged delinquent with a person adjudged mentally ill and in need of treatment. As to purpose and status, the full analogizing fails. As to the purpose served, while neither situation involves imposition of penalty or punishment, the institutionalization of a mentally ill person for psychiatric treatment until recovered involves factors and alternatives different than those involved in the custody placement of a minor adjudged delinquent. To read the two statutes involved—the Mental Health Act[11] and the Children's Code[12]—is to recognize the different purposes served and necessarily different procedures required. The federal appeals court decision cited above, spelling out the "least restrictive alternative" test, held that commitment of a mentally ill person for treatment was ". . . justifiable only when the respondent is 'mentally ill to the extent that he is likely to injure himself or other persons if allowed to remain at

---

[10] *Covington v. Harris* (D. C. Cir. 1969), 419 Fed. 2d 617, 623, citing and following *Lake v. Cameron* (D. C. Cir. 1966), 364 Fed. 2d 657. *See also: Lessard v. Schmidt* (D. C. Wis. 1972), 349 Fed. Supp. 1078.

[11] Ch. 51, Stats.

[12] Ch. 48, Stats.

liberty.' " [13] The wide range of factors involved in making an appropriate disposition in a child-adjudged-delinquent situation in order to serve the best interest of the child, with consideration for the interest of parents and the public, cannot be similarly capsulized or narrowed.

In the case before us, we hold, as did the reviewing circuit court, that the children's court judge did not only satisfactorily state reasons for the particular disposition made, but also satisfactorily considered other available alternatives to the particular disposition made. However, while upholding the particular disposition here made instead of any of the possible alternative dispositions, we do not adopt the "least restrictive alternative" test, particularly not in the form urged by appellant. To justify any children's court placing of custody in the state department, appellant would require proof, not by preponderance of the evidence but beyond a reasonable doubt,[14] establishing ". . . (1) what alternatives are available; (2) what alternatives were investigated; and (3) why the investigated alternatives were not deemed suitable." [15] This goes far beyond resolving doubts in favor of home placement.[16] It would end the choice by

[13] *Covington v. Harris, supra,* footnote 10, at page 623, quoting D. C. Code sec. 21–544 (1967).

[14] Brief of Appellant, pages 27, 28, stating: ". . . Proof of . . . lack of suitable less restrictive alternatives by mere preponderance of the evidence would accord equal weight to the interest of the public in a commitment with the interest of the juvenile to his liberty. . . .

". . . [A]ppellant asserts that commitment of a juvenile to a state institution as a delinquent can be justified only with a compelling state interest served thereby, with proof of . . . exhaustion of less drastic means, made beyond a reasonable doubt. . . ."

[15] *Id.* at page 28.

[16] *In re Alley, supra,* footnote 7, at pages 90, 91, this court holding: ". . . A result [as to a child adjudged delinquent] should not be arrived at which deprives a child of a home, or a parent

the judge of the disposition among those available, in the exercise of judicial discretion, that appears best calculated to meet the test of serving the interest of the child, with consideration given to the interests of parents and public. It would substitute that the alternatives be graded in degrees of onerousness, with a from-the-bottom-up process of determining each such less onerous disposition unsuitable before the next more onerous alternative could be considered. While the selection of any one alternative does involve and require the rejection of others, less or more onerous, as comparatively inappropriate, we do not see a juvenile judge as required to climb such stairway, one step at a time.

Additionally, appellant claims that the juvenile court judge improperly considered charges of disorderly conduct and delivery of a controlled substance and that a police report was received in evidence without foundation. The inferences that appellant extracts from the record in these regards are without foundation. While a police report is part of this record, there is no indication that it was used by the trial judge in determining the appropriate disposition following the adjudication of here admitted delinquency. The court's questions concerning disorderly conduct and delivery of controlled substances do not furnish a basis for holding that these charges were considered in determining the appropriate disposition. Appellant's attack upon the reviewing circuit court for assertedly using criminal court standards for review is found to be without foundation, and it is to be noted that for our court, as for the circuit court, the question here is whether the juvenile court abused its discretion.[17]

of the right to the custody and care of the child, except in cases where the best interests of the child clearly warrant such a step. Doubt should be resolved in favor of the home even though it be imperfect and even though its standards be not of the highest. . . ."

[17] *In re Johnson* (1960), 9 Wis. 2d 65, 75, 76, 100 N. W. 2d 383, this court holding: "Thus the question presented to us upon appeal

Finally, appellant contends that the juvenile court was here without jurisdiction to act because it went beyond the purposes enumerated in sec. 48.01, Stats. This ultra vires argument appears to involve what appellant's brief terms ". . . conclusions drawn by the juvenile court judge about the seriousness of the charge. . . ." We see no impropriety in the juvenile court placing upon the scales the nature and seriousness of the conduct of the minor adjudged delinquent. This is clearly relevant to determining the proper disposition to serve the best interests of the delinquent, of his parents and of the public. As this court said in a case involving waiver of juvenile court jurisdiction: ". . . While the paramount consideration in juvenile court proceedings is the best interest of the child, this interest must be balanced against the interest of the public. . . ." [18] While the primary statutory goal is the best interest of the child, ". . that interest is, as it should be, conditioned by the consideration of 'the interest of the public.' " [19] In balancing the paramount interest of the minor and the interests of parents and public, in selecting the disposition that is most appropriate in a particular case, in considering each case on its individual merits, in weighing the factual considerations involved and the weight to be accorded them, we find it ". . . essential that the juvenile court judge exercise judicial discretion in conformance with the man-

from the circuit court remains the same as that which was before the circuit court, namely, whether the findings were against the great weight and clear preponderance of the evidence, and whether the juvenile court abused its discretion."

[18] *Mikulovsky v. State* (1972), 54 Wis. 2d 699, 707, 196 N. W. 2d 748.

[19] *Winburn v. State, supra,* footnote 8, at page 161, this court also holding: ". . . The interest of the public is served not only by rehabilitating juveniles when that is possible, but the interest of the public is also served by removing some juveniles from environments where they are likely to harm their fellow citizens. . . ."

date of the provisions of ch. 48, and as it has been construed by this court." [20] That is exactly what we find the juvenile court judge did in the case before us, fully and fairly and properly so, and we affirm the order of the circuit court affirming the order of the county court, children's division.

*By the Court.*—Order affirmed.

---

[20] *In re Interest of F. R. W. (a minor)* (1973), 61 Wis. 2d 193, 209, 212 N. W. 2d 130, upholding sec. 48.18, Stats., providing for waiver of juvenile court jurisdiction, against a claim of vagueness because it failed to specifically state waiver criteria to be considered in exercising the judicial discretion involved in waiver of juvenile court jurisdiction.