IN the INTEREST OF REGINALD D., A Person Under The Age of Eighteen:

REGINALD D., Appellant,

v.

STATE of Wisconsin, Respondent.

Supreme Court

*No. 93–2331. Oral argument March 8, 1995.—Decided June 8, 1995.*

(On certification from the court of appeals.)

(Also reported in 533 N.W.2d 181.)

301

For the appellant there were briefs and oral argument by *James M. Weber*, Milwaukee.

For the respondent the cause was argued by *David Robles*, assistant district attorney, with whom on the

brief was *E. Michael McCann,* district attorney, Milwaukee.

WILCOX, J.  This case comes to this court on certification from the court of appeals pursuant to sec. 809.61, STATS.[1] The overriding issue is whether a juvenile who is detained in a secure detention center, prior to being found delinquent in a jury trial, is entitled to time-served credit towards the subsequent disposition order.[2] We conclude that a juvenile is not entitled to time-served credit in such cases and, therefore, affirm the decision of the circuit court, Judge David A. Hansher.

The facts in this case are not in dispute. On April 28, 1992, Reginald D. was arrested for aggravated battery as a result of an incident where two women were beaten by a group of juveniles. A delinquency petition

---

[1] Section (Rule) 809.61, STATS., provides:

> The supreme court may take jurisdiction of an appeal or other proceeding in the court of appeals upon certification by the court of appeals or upon the supreme court's own motion. The supreme court may refuse to take jurisdiction of an appeal or other proceeding certified to it by the court of appeals.

[2] As an initial matter, we note that Reginald D. is no longer subject to a juvenile disposition order. Consequently, as to Reginald, resolution of the issue in this case is moot. Because this issue raises an important question of law and is likely to recur in the future, and because this issue would often times evade review due to the limited time available for a juvenile disposition, we choose to address the merits of the issue. *See State ex rel. La Crosse Tribune v. Circuit Court for La Crosse County,* 115 Wis. 2d 220, 229, 340 N.W.2d 460, 464 (1983) (setting out situations where this court will consider a matter for determination even though the result will have no practical effect on the parties).

was filed against Reginald two days later pursuant to sec. 48.12, STATS. Reginald subsequently was held[3] in a secure detention facility between April 29, 1992, and July 2, 1992, when he was released to the "In-House Corrections" program. On August 19, 1992, he was returned to secure custody because of a poor record in the In-House Corrections program. He remained in secure custody until a formal disposition order was entered on January 21, 1993.

The jury trial in the matter was scheduled and commenced on October 5, 1992. However, a mistrial was declared prior to the jury being selected because of the unavailability of the deputy clerk. On October 16, 1992, a hearing was held regarding the applicable statutory time limits under the Wisconsin Children's Code.[4] Reginald and his counsel consented to a waiver of the time limits. Finally, on January 19, 1993, a jury

---

[3] Section 48.208, STATS., provides the criteria for holding a child in a secure detention facility. As relevant here, a child may be held where "[p]robable cause exists to believe that the child has committed a delinquent act and either presents a substantial risk of physical harm to another person or a substantial risk of running away . . . so as to be unavailable for a court hearing . . .." Section 48.208(1), STATS.

[4] Pursuant to sec. 48.30(1), STATS., the hearing to determine the child's plea to a petition filed alleging delinquency must be made within ten days of the filing of the petition where the child is held in secure custody. If the petition is contested, the circuit court must set a date for a fact-finding hearing within twenty days from the plea hearing for a child who is held in secure custody. Section 48.30(7), STATS. Finally, at the close of the fact-finding hearing, the court must set a date for a disposition hearing within ten days for a child that is being held in secure custody. Section 48.31(7), STATS. These strict time limits are, however, tempered by sec. 48.315, STATS., which allows for extensions of time under certain circumstances. *See, e.g.,* sec.

trial was started. The trial continued on January 20 and 21, and concluded with the jury finding Reginald guilty of high risk battery, party to a crime, and battery, party to a crime. The circuit court, as part of its disposition order, placed Reginald at Ethan Allen School for a term of two years. The court denied any credit for time spent in pre-disposition detention.

Reginald then filed a number of post-adjudication motions requesting, among other things, time-served credit for the days spent in pre-disposition secure custody. The motions were heard on July 30, 1993. The circuit court, in a written order, denied all post-adjudication motions, including the request for time-served credit. Reginald appealed to the court of appeals which, in turn, certified the appeal to this court for review.

In resolving this case, we address the following issues:

(1)   Whether the Due Process and Equal Protection provisions of the United States and Wisconsin Constitutions require that adults and juveniles be treated similarly with regard to the award of credit for time served in custody prior to sentencing or disposition;

(2)   Alternatively, whether the Wisconsin Children's Code, ch. 48, STATS., by not explicitly denying such credit, allows a circuit court discretion to grant credit to a juvenile offender for time served in secure custody prior to disposition.

Resolution of the questions in this case involves statutory construction and constitutional interpretation which this court considers utilizing a *de novo*

---

48.315(1)(b), STATS. (an extension consented to by the child and his or her attorney).

standard of review. *Szarzynski v. YMCA, Camp Minikani,* 184 Wis. 2d 875, 883–84, 517 N.W.2d 135, 138 (1994); *State v. McManus,* 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989); *State v. Hermann,* 164 Wis. 2d 269, 281, 474 N.W.2d 906, 910 (Ct. App. 1991).

Pursuant to sec. 973.155(1)(a), STATS., adult offenders have the right to receive credit towards their sentences for time served in pre-sentence custody.[5] Under the Children's Code, however, there currently is no corresponding provision granting credit for time served in secure detention awaiting disposition. Reginald recognizes this distinction and concedes that "[c]urrently, sec. 973.155, STATS., applies only to convicted offenders and, therefore, does not expressly extend to juveniles held in pretrial custody." Reginald contends, however, that there exists no rational basis for this discrepancy, and it is a violation of due process and equal protection of the laws.

The Fourteenth Amendment to the United States Constitution provides "nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." The functional equivalent of this clause is found in Article I, sec. 1, of the

[5] Section 973.155(1)(a), STATS., provides:

**Sentence credit.** (1)(a) A convicted offender shall be given credit toward the service of his or her sentence for all days spent in custody in connection with the course of conduct for which sentence was imposed. As used in this subsection, "actual days spent in custody" includes, without limitation by enumeration, confinement related to an offense for which the offender is ultimately sentenced, or for any other sentence arising out of the same course of conduct, which occurs:

1. While the offender is awaiting trial;
2. While the offender is being tried; and
3. While the offender is awaiting imposition of sentence after trial.

Wisconsin Constitution: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed." As noted in *State ex rel. Sonneborn v. Sylvester*, 26 Wis. 2d 43, 49–50, 132 N.W.2d 249, 252 (1965), even though Article I, sec. 1, is based on the Declaration of Independence, "there is no substantial difference" between its equal protection and due process protections and that of the Fourteenth Amendment. *See also McManus*, 152 Wis. 2d at 130, 447 N.W.2d at 660 ("This court has held the due process and equal protection clauses of the Wisconsin Constitution are substantial equivalents of their respective clauses in the federal constitution."); *Funk v. Wollin Silo & Equipment, Inc.*, 148 Wis. 2d 59, 61 n.2, 435 N.W.2d 244, 245 n.2 (1989) ("We have given the equal-protection provision of the Wisconsin Constitution and the parallel clause of the United States Constitution identical interpretation.").

■■■
Reginald's due process argument is one of substantive concerns rather than procedural ones. Governmental action violates "substantive due process" when the action in question, while adhering to the forms of law, unjustifiably abridges the Constitution's fundamental constraints upon the content of what government may do to people under the guise of the law. This court has recognized that "due process requires that the means chosen by the legislature bear a reasonable and rational relationship to the purpose or object of the enactment; if it does, and the legislative purpose is a proper one, the exercise of the police power is valid." *McManus*, 152 Wis. 2d at 130, 447 N.W.2d at

660. Further, "[t]he police power of the state is the inherent power of the government to promote the general welfare. It covers all matters having a reasonable relation to the protection of the public health, safety or welfare." *State v. Interstate Blood Bank, Inc.,* 65 Wis. 2d 482, 490, 222 N.W.2d 912, 916 (1974) (citations omitted).

Reginald's substantive due process argument is brief—he argues that the juvenile system must comport with the essentials of due process and fair treatment.[6] By not allowing credit for pre-disposition time served in secure custody, Reginald asserts that the State is violating fundamental fairness since it grants pre-sentence credit for adult offenders. Hence, Reginald's argument is that the *inaction* of the legislature on this point violates due process. We agree with Reginald's general assertion that the juvenile system must comport with the essentials of due process and fair treatment. There can be no dispute that juveniles charged in a delinquency petition are afforded certain constitutional and statutory rights. We are not per-

[6] Reginald cites to *Breed v. Jones,* 421 U.S. 519 (1975), in support of this assertion. In *Breed,* the United States Supreme Court concluded that the prosecution of a juvenile as an adult, after Juvenile Court proceedings resulted in a finding that the juvenile had violated a criminal statute, violated the Double Jeopardy Clause of the United States Constitution. *Id.* at 532–33. The *Breed* court never considered the issue of due process, either procedural or substantive. Further, the reference that Reginald makes from *Breed* is actually a quote from *Kent v. United States,* 383 U.S. 541, 562 (1966), wherein the Court held that hearings under the statute there involved "must measure up to the essentials of due process and fair treatment." Thus, we are not persuaded that *Breed* is controlling, or even persuasive in the present case.

suaded, however, that denying juveniles credit for pre-disposition time served in secure detention results in a violation of substantive due process. On the contrary, the legislature's decision not to allow credit is an appropriate police power function and bears a rational relation to the promotion of the safety and general welfare of juveniles. Simply put, denying time-served credit here is not "unfair" in the classic sense of substantive due process.

Equal protection, like due process, requires that there exist a reasonable and practical grounds for the classifications drawn by the legislature. *McManus,* 152 Wis. 2d at 130, 447 N.W.2d at 660. In *McManus,* we also explained:

> Equal protection does not deny a state the power to treat persons within its jurisdiction differently; rather, the state retains broad discretion to create classifications so long as the classifications have a reasonable basis. The fact a statutory classification results in some inequity, however, does not provide sufficient grounds for invalidating a legislative enactment. Where, as here, a suspect classification is not alleged, the legislative enactment "must be sustained unless it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest." "If the classification is reasonable and practical in relation to the objective, that is sufficient and doubts must be resolved in favor of the reasonableness of the classification."

*Id.* at 131, 447 N.W.2d at 660–61 (citations omitted); *see also Georgina G. v. Terry M.,* 184 Wis. 2d 492, 518, 516 N.W.2d 678, 686 (1994) (where legislative scheme does not affect a fundamental right and is not based on a suspect class, statute is constitutional unless it is not

rationally related to a legitimate governmental interest).

Reginald's equal protection argument does not allege that juveniles subject to ch. 48, STATS., are a suspect class, thus, he can only prevail on his theory if he proves that the legislative distinction between adults and juveniles is patently arbitrary and bears no rational relation to a legitimate governmental interest. Reginald does not go so far as to claim that the failure of the Wisconsin Children's Code to provide credit for pre-disposition is patently arbitrary. Rather, he focuses on the number of procedural similarities between the adult criminal system and the Children's Code, as well as on the overlapping goals of the two systems. For example, in *State ex rel. Bernal v. Hershman,* 54 Wis. 2d 626, 630, 196 N.W.2d 721, 723 (1972), this court found that, for constitutional purposes, juvenile liberty under supervision is synonymous with parole as used in criminal law. In *State v. Baker,* 179 Wis. 2d 655, 658–69, 508 N.W.2d 40, 41 (Ct. App. 1993), the court of appeals held that juveniles who are waived into adult court, and are later convicted, must be awarded credit for pre-waiver time spent in pre-trial secure detention. Further, whether an individual escapes from the county jail or from a secure detention facility, they subject themselves to the escape statute—sec. 946.42(1), STATS. Also, juveniles charged with "Battery by Prisoners" pursuant to sec. 940.20(1), STATS., are subject to the same penalties as adult offenders of this statute. Finally, the purpose of bail in the adult system, and pre-trial detention in the juvenile system, is not to punish but rather is to ensure the accused's appearance at the court proceedings.[7]

---

[7] Reginald asserts that this provision has essentially the same effect as bail in the adult system. Bail, however, is not an

310

While juveniles do indeed share a number of the same fundamental procedural rights in delinquency proceedings as adults enjoy in criminal proceedings, neither this court nor the United States Supreme Court has required an exact match.[8] *See Winburn v. State,* 32 Wis. 2d 152, 158, 145 N.W.2d 178, 180 (1966) ("The juvenile law is not to be administered as a criminal statute, and the rules of criminal procedure are not to be engrafted upon the Children's Code."); *Kent v. United States,* 383 U.S. 541, 544 (1966) (while hearings in children's court must measure up to the essentials of due process and fair treatment, they need not conform with all of the requirements of a criminal trial). The distinction between the juvenile and adult systems has long been recognized by this court:

> This law [the Children's Code] was not designed as a method of punishment for crimes committed by juveniles. Every section and paragraph of the statute is permeated with the benevolent purpose of improving the child's condition and not with punishing his past conduct. The whole object and

option for juveniles in Wisconsin. See *Baldwin v. Lewis,* 300 F. Supp. 1220, 1233 (1969) ("the Wisconsin Children's Code . . . provides an adequate substitute for bail"), *rev'd on other grounds* 442 F.2d 29 (7th Cir. 1971).

[8] For example, in *D.M.D. v. State,* 54 Wis. 2d 313, 317, 195 N.W.2d 594, 596 (1972), this court remarked:

> Due process and fair treatment are to mark juvenile proceedings as well as adult trials. Both have a common harbor, the fair and just disposition of matters before the court, but they may sail by different routes to the shared destination. Each must avoid the reefs of constitutionally assured protections, but they need not sail side by side in so doing. Any analogy established between steps in juvenile proceedings with stages in the processing of criminal cases may be arguably persuasive, but it is not controlling.

purpose of this law will be defeated if it is construed and applied as a punitive statute.

*In re Alley,* 174 Wis. 85, 91–92, 182 N.W. 360, 362 (1921). This differing treatment is based on the underlying notion in chapter 48 that the best interests of the child, his or her parents, and the public are of paramount concern in the decision-making process of the juvenile court. As noted in sec. 48.01(1)(c), STATS., the chapter shall be interpreted, *inter alia,* to effectuate the following legislative purposes: "Consistent with the protection of the public interest, to remove from children committing delinquent acts the consequences of criminal behavior and to substitute therefor a program of supervision, care and rehabilitation." Thus, unlike the adult system, a commitment of a juvenile pursuant to chapter 48 is not for the purpose of penalty or punishment.

We conclude that there is no equal protection violation based on the legislature's decision not to include a provision granting credit to a juvenile who has been in secure custody pursuant to sec. 48.208, STATS., prior to ultimate disposition. Disallowing such credit is not patently arbitrary. There is a rational basis for the distinction between granting credit pursuant to sec. 973.155, STATS., and not granting such credit under chapter 48. The Children's Code specifically concerns itself with supervision, treatment, and rehabilitation. Here, granting time-served credit would shorten the length of the disposition order.[9] To infringe on the dis-

_____

[9] Under the present provisions of the Children's Code, where a child has been adjudged delinquent, the juvenile court, in crafting a disposition order pursuant to sec. 48.34(4m), STATS., "may make the order apply for up to two years or until the child's 19th birthdate, whichever is earlier." *See* sec. 48.355

position orders as set forth in secs. 48.34 and 48.355, STATS., would be an improper encroachment upon the ability of the system to provide the appropriate supervision, treatment, and rehabilitation that is desired by the legislature for juveniles adjudged delinquent. A conclusion by this court that juveniles are entitled to credit in the same manner as adults would be to treat juveniles as adults, something the legislature has seen fit to avoid by drafting chapter 48.

In sum, we do not believe it is appropriate for this court to abandon the treatment and rehabilitative nature of the juvenile system and return it to that of the criminal courts. If the legislature believes it is appropriate to engraft certain parts of the adult system onto the juvenile system, then it has that power and prerogative. We believe, however, that the goals of supervision, treatment, and rehabilitation, as set forth in the Children's Code, provide a rational basis for the differing treatment of juveniles and adults in regards to time-served credit.

Reginald makes an alternative argument that even though time-served credit is not expressly granted to juveniles in sec. 973.155, STATS., or in chapter 48, because the best interests of the child are paramount, juvenile courts have the discretion to make such an award.[10] The State contends that because sec.

_____

(4)(b), STATS. Consequently, there is a limited amount of time initially available for the necessary treatment and rehabilitation of the juvenile delinquent. While we recognize that there may be subsequent extensions of the disposition pursuant to sec. 48.365, STATS., those proceedings are separate and distinct from the original disposition order.

[10] Here, the circuit court concluded that it lacked the authority to exercise its discretion on the time-served credit issue, but felt compelled to make the following comments: "I

313

48.34, STATS., sets out specific disposition alternatives, circuit courts are foreclosed from selecting an alternative not specified in the act.[11] The State, citing *State ex rel. Harris v. Larson,* 64 Wis. 2d 521, 527, 219 N.W.2d 335, 339 (1974), relies on the *expressio unius est exclusio alterius* doctrine of statutory construction, namely, the fact that the legislature did not provide for a credit award is evidence of its intent to deny such a credit. In holding that there is no authority for juvenile court judges to order a child detained in the detention home after his status has been adjudicated and he is awaiting placement, the *Larson* court explained:

> The [Children's Code] reflects the legislature's desire to specifically define the authority of appropriate officers. Where there is evidence of such enumeration, it is in accordance with accepted principles of statutory construction to apply the maxim, *expressio unius est exclusio alterius;* in short, if the legislature did not specifically confer a power, it is evidence of legislative intent not to permit exercise of the power.

*Id.*

---

sympathize to your view here. But I feel I am bound by the Supreme Court ruling [*J.K. v. State,* 68 Wis. 2d 426, 228 N.W.2d 713 (1975)]. If I was on the Supreme Court I would be ruling in your favor. Makes greater sense. But I am not at this point going to say well my view should be the view of the law in Wisconsin."

[11] *See* sec. 48.34(1)–(15), STATS., describing the various disposition options available to the juvenile court judge. The options range from counseling under subsection (1) to transfer legal custody to the department for placement in a secure correctional facility under subsection (4m).

In contrast, Reginald notes that sec. 48.01(2), STATS., provides that chapter 48 "shall be liberally construed to effect the objectives contained in this section" and "[t]he best interests of the child shall always be of paramount consideration." This court recently considered the concept of "liberal construction" under the Children's Code in *R.W.S. v. State,* 162 Wis. 2d 862, 471 N.W.2d 16 (1991). There, the court explained: "The term liberal is often used to signify an interpretation which produces broader coverage or more inclusive application of statutory concepts. What is called a liberal construction is ordinarily one which makes a statute apply to more things or in more situations than would be the case under a strict construction." *Id.* at 871, 872, 471 N.W.2d at 20.

In *Breier v. E.C.,* 130 Wis. 2d 376, 387 N.W.2d 72 (1986), this court considered a similar request to find a discretionary remedy where the Children's Code provided no express authority for the circuit court to act. There, the petitioners sought an order to expunge police records of juvenile arrests. *Id.* at 381, 387 N.W.2d at 73. They urged that such authority is implied from the legislative directive that courts act in the best interests of the child. *Id.* at 390, 387 N.W.2d at 78. This court declined to find such authority, stating that "the Children's Code does not confer unfettered discretion to craft unique and unspecified remedies in juvenile matters. The code authorizes courts *to choose between specified dispositions,* while basing their decision in the best interests of the child." *Id.* (emphasis added). Because the required remedy was not delineated in ch. 48, STATS., it was not a remedy to which the "best interests of the child" standard could statutorily apply. *Id.*

315

Here, time-served credit is not a provision of ch. 48, STATS. Further, despite Reginald's assertions to the contrary, we are not persuaded that a liberal construction of sec. 48.34, STATS., to wit, "if the judge adjudges a child delinquent, he or she shall enter an order deciding one or more of the dispositions of the case as provided in this section" would encompass a disposition *not* provided in this section. On the contrary, by not specifically conferring a power to grant time-served credit, we believe that the legislature did not intend for an exercise of discretion in this area. Thus, we conclude that a circuit court does not have discretion to consider time-served credit when entering a disposition order for a juvenile adjudged delinquent.

*By the Court.*—Order affirmed.

SHIRLEY S. ABRAHAMSON, J. *(concurring)*. I join this opinion. I write separately to state that as I read the opinion it rightly does not restrict a circuit court's discretion under sec. 48.355 to fashion a disposition for a delinquent child.

I agree that, since no statute authorizes a circuit court to award "credit" for the time a delinquent child spends in pre-trial detention, no such "credit" should be awarded. Nevertheless, I conclude that in fashioning a disposition a circuit court may consider the amount of time a child spends in pre-trial detention and the experiences a child encounters in that setting.

I am authorized to state that JUSTICE WILLIAM A. BABLITCH joins this opinion.