Kristine NEIMAN, individually and as Personal Representative of the Estate of Jared Neiman, and Steven Neiman, Plaintiffs-Respondents,

v.

AMERICAN NATIONAL PROPERTY AND CASUALTY COMPANY, Defendant-Appellant.

Supreme Court

*No. 99–2554. Oral argument May 4, 2000.—Decided July 7, 2000.*

(On bypass from the court of appeals.)

## 2000 WI 83

(Also reported in 613 N.W.2d 160.)

411

412

For the defendant-appellant there were briefs by *James W. Mohr, Jr.*, and *Mohr & Anderson, S.C.*, Hartford, and oral argument by *James W. Mohr, Jr.*

For the plaintiffs-respondents there was a brief by *Eugene A. Gasiorkiewicz*, *Alice A. Rudebusch* and *Hanson & Gasiorkiewicz, S.C.*, Racine, and oral argument by *Eugene A. Gasiorkiewicz*.

An amicus curiae brief was filed *John S. Greene*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general, on behalf of the State of Wisconsin.

An amicus curiae brief was filed by *Robert L. Jaskulski* and *Domnitz, Mawicke & Goisman, S.C.*, Milwaukee, and *William C. Gleisner, III*, and *Law Offices of William C. Gleisner, III*, Milwaukee, on behalf of the Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Noreen J. Parrett, James A. Friedman* and *La Follette Godfrey & Kahn*, Madison, on behalf of the Wisconsin Insurance Alliance, Wisconsin Association of Mutual Insurance Companies, Civil Trial Counsel of Wisconsin, Professional Insurance Agents of Wisconsin, Inc., Independent Insurance Agents of Wisconsin, Inc., and the State Medical Society of Wisconsin.

An amicus curiae brief was filed by *Mark E. Larson* and *Gutglass, Erickson & Bonville, S.C.*, Milwaukee, on behalf of the Wisconsin Patients Compensation Fund.

An amicus curiae brief was filed by *John S. Skilton, Michael B. Van Sicklen, Roberta F. Howell*, and *Foley & Lardner*, Madison, on behalf of Physicians Insurance Company of Wisconsin, Inc.

An amicus curiae brief was filed by *Howard R. Orenstein, Terry L. Wade* and *Robins, Kaplan, Miller & Ciresi, L.L.P.*, Minneapolis, Minnesota, on behalf of Barbara, Roger, Mitchell and Russell Schultz.

¶ 1. WILLIAM A. BABLITCH, J. Kristine Neiman was injured, and her child stillborn, as the result of an accident occurring in September 1995. At the

time of the accident, Wis. Stat. § 895.04(4) (1995–96)[1] provided that in a wrongful death action damages up to $150,000 could be awarded for the loss of society and companionship. Subsequently the legislature increased the amount of damages that could be awarded under this statute and applied the increase retroactively. 1997 Wis. Act 89.[2] The American National Property and Casualty Company (ANPAC) appeals from a judgment of the circuit court declaring as constitutional the retroactive increase in wrongful death damages available pursuant to Wis. Stat. § 895.04(4) (1997–98).[3] Application of the higher statutory damage limit to an event occurring before the amendment to § 895.04(4) was enacted, ANPAC contends, violates the due process protections guaranteed by the Fourteenth Amendment to the United States

---

[1] Wisconsin Stat. § 895.04 (1995–96) states:

Plaintiff in wrongful death action.

. . .

(4) Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $150,000 for loss of society and companionship may be awarded to the spouse, children or parents of the deceased.

[2] Wisconsin Stat. § 895.04(4) as amended by 1997 Wis. Act 89 provides:

Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of the death.

[3] All subsequent statutory references are to the 1997–98 volume of the Wisconsin Statutes, unless noted otherwise.

Constitution as well as art. I, § 1 of the Wisconsin Constitution.

¶ 2. We conclude that a retroactive increase in damages available pursuant to Wis. Stat. § 895.04(4) unfairly alters settled property rights without achieving a broad public benefit. As a result, the retroactive element of the statute is unconstitutional under our test set forth in *Martin v. Richards*, 192 Wis. 2d 156, 531 N.W.2d 70 (1995). Accordingly, we reverse the circuit court.

¶ 3. The relevant facts are not in dispute. Kristine and Steve Neiman (the Neimans) purchased underinsured motorist insurance coverage from ANPAC. On September 5, 1995, Kristine Neiman was in an automobile accident. As a result of the accident Kristine, eight-months pregnant, sustained personal injuries, and her child was stillborn.

¶ 4. Subsequently, the Neimans settled with the underinsured driver and received $100,000 for Kristine Neiman's personal injuries and $100,000 as damages for the loss of society and companionship of Jared Neiman.

¶ 5. On the date the accident occurred, the maximum statutory damage limit for a wrongful death claim was $150,000. On April 28, 1998, an amendment to the wrongful death statute went into effect, retroactively increasing the limit for recovery for loss of society and companionship from $150,000 to $500,000 in the case of a deceased minor and $350,000 in the case of a deceased adult. 1997 Wis. Act 89, § 3. In August 1998 the Neimans brought a claim against ANPAC, asserting that additional payments for the wrongful death of Jared Neiman were due pursuant to their underinsured motorist coverage.

¶ 6. Before the circuit court, ANPAC moved for a judgment declaring that the retroactive application of increased wrongful death damage limits was unconstitutional. The Kenosha County Circuit Court, the Honorable Mary Wagner-Malloy presiding, denied ANPAC's motion and upheld the constitutionality of the statute as amended by 1997 Wis. Act. 89.

¶ 7. The parties subsequently entered into a settlement agreement. Under this agreement, ANPAC paid the Neimans an additional $50,000 as wrongful death damages. This amount represented the balance between the $100,000 collected from the underinsured motorist and the $150,000 limit for loss of society and companionship under Wis. Stat. § 895.04(4) (1995–96). The Neimans retained a claim against ANPAC for additional wrongful death damages, pursuant to the increase in the statutory limits established by 1997 Wis. Act 89. ANPAC retained the right to appeal the circuit court's judgment, finding the retroactive increase in wrongful death damage limits to be constitutional. Subsequently, Kristine Neiman filed a petition to bypass the court of appeals, which we granted.

¶ 8. The sole issue presented for review is whether retroactive application of the increase in wrongful death damages as provided in 1997 Wis. Act 89 violates ANPAC's due process rights guaranteed by art. I, § 1 of the Wisconsin Constitution[4] and the Four-

---

[4] Article I, § 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

teenth Amendment to the United States Constitution.[5] We have found the due process clause in our state constitution to be the substantial equivalent to its counterpart in the federal constitution. *Reginald D. v. State*, 193 Wis. 2d 299, 307, 533 N.W.2d 181 (1995). Whether or not a legislative act that applies retroactively violates due process is a question of law, which this court reviews de novo. *Chappy v. LIRC*, 136 Wis. 2d 172, 184, 401 N.W.2d 568 (1987).

¶ 9. A rational basis test is applied when the court reviews the constitutionality of retroactive economic legislation. *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 730 (1984). Further, this court has held that to determine whether a retroactive statute is supported by a rational basis, the public interest served by the statute is weighed against the private interest that it overturns, including any unfairness caused by the retroactivity. *Martin*, 192 Wis. 2d at 201. " 'Every presumption must be indulged to sustain the law if at all possible and, wherever doubt exists as to a legislative enactment's constitutionality, it must be resolved in favor of constitutionality.' " *Chappy*, 136 Wis. 2d at 185 (quoting *State ex rel. Hammermill Paper Co. v. La Plante*, 58 Wis. 2d 32, 46, 205 N.W.2d 784 (1973)).

¶ 10. There is no dispute on the issue of whether the plaintiffs' cause of action actually accrued prior to the effective date of the change in Wis. Stat. § 895.04(4). Kristine Neiman was involved in an accident on September 5, 1995. In April 1998 the

---

[5] The Fourteenth Amendment to the United States Constitution states in relevant part that "[n]o State shall. . .deprive any person of life, liberty, or property, without due process of law. . . ."

legislature amended the wrongful death statute and increased damages available for the loss of society and companionship. 1997 Wis. Act 89, § 3 (enacted April 13, 1998; published April 27, 1998). Therefore, the cause of action accrued before the amendment to the statute.

¶ 11. There is also no dispute on the issue of whether the amendment to Wis. Stat. § 895.04(4), implemented by 1997 Wis. Act 89, is indeed retroactive. It is. The legislature provided that Act 89 "first applies to actions commenced on the effective date of this subsection." 1997 Wis. Act 89, § 4. This language indicates that the legislature intended to include within the scope of the amendment those claims in which the events giving rise to a cause of action had already occurred. *See Martin*, 192 Wis. 2d at 200. (phrase "filed on or after" in a legislative act indicated the legislature's intention to apply the new law retroactively). Thus, in this case we need not look further to conclude that the legislature intended § 895.04(4) to apply retroactively.

■

¶ 12. We must first determine whether the retroactive statute "is remedial or procedural rather than substantive." *Snopek v. Lakeland Med. Ctr.*, 223 Wis. 2d 288, 294, 588 N.W.2d 19 (1999). Statutes that are remedial or procedural are generally given retroactive application. *Gutter v. Seamandel*, 103 Wis. 2d 1, 17, 308 N.W.2d 403 (1981).

■

¶ 13. When the limit of damages that can be recovered is set by statute, the amount that can be recovered is fixed on the date of injury. *Martin*, 192 Wis. 2d at 206–07 (citing *State ex rel. Briggs & Stratton v. Noll*, 100 Wis. 2d 650, 655–56, 302 N.W.2d 487 (1981); *Bradley v. Knutson*, 62 Wis. 2d 432, 436–37, 215

N.W.2d 369 (1974)). The retroactive increase in damages available under Wis. Stat. § 895.04(4) for loss of society and companionship is a change in substantive rights. *Bradley*, 62 Wis. 2d at 436. Therefore, the retroactive application of the increase in wrongful death damage limits affects a substantive right fixed on the date that the auto accident occurred.

¶ 14. Retroactive legislation must meet the test of due process and merely identifying a substantive, or vested, property right is not dispositive for due process purposes. The concept of vested rights is "conclusory—a right is vested when it has been so far perfected that it cannot be taken away by statute." Charles B. Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv. L. Rev. 692, 696 (1960). Having concluded that the statute retroactively affects a substantive right that accrued before the passage of the legislation, we then proceed to apply the balancing test set forth in *Martin*. To the extent the language in prior holdings implies that identifying a "vested" right is dispositive in determining whether a clearly retroactive statute is constitutional, that language is overruled. *See Noll*, 100 Wis. 2d at 656 (acts of the legislature may not constitutionally impair vested rights acquired under prior law). When considering the constitutionality of expressly retroactive laws, the *Martin* test is applied.

¶ 15. The balancing test we set forth in *Martin* and employed here is not an opinion poll. "[W]e must balance the public interest served by the retroactive application of the [statute] against the private interests that are overturned by it, including any unfairness

inherent in such application." *Id.* at 211. The test occurs within an established legal framework.

¶ 16. This framework includes the principle that, like prospective acts, retroactive legislative enjoys a presumption of constitutionality. *Martin*, 192 Wis. 2d at 201. However, retroactive legislation "often unsettles important rights" and "is viewed with some degree of suspicion." *Id.* We stated in *Snopek*:

> "Strong common-law tradition defines the legislature's primary function as declaring law to regulate future behavior. Thus, as a matter of justice, no law should be enforced before people can learn of its existence and conduct themselves accordingly. In short, retroactivity disturbs the stability of past transactions."

*Snopek*, 223 Wis. 2d at 293–94 (quoting *Employers Ins. v. Smith*, 154 Wis. 2d 199, 453 N.W.2d 856 (1990)).

¶ 17. An additional part of our framework of analysis is the principle that the justification for prospective legislation may not suffice for retroactive legislation. *Martin*, 192 Wis. 2d at 201 (citing *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 17 (1976)). The increase in damages at issue in this case applies to the "loss of society and companionship." Wis. Stat. § 895.04(4). This recovery protects "the emotional or sentimental aspects" in family relationships that is lost due to another's negligence. *Theama v. City of Kenosha*, 117 Wis. 2d 508, 519, 344 N.W.2d 513 (1984). The record illustrates that the legislature heard persuasive testimony about the need for this amendment to Wis. Stat. § 895.04(4) from the family members of children killed through the negligent actions of another person.

This testimony presented compelling arguments for increasing the wrongful death liability limits prospectively. In our analysis of the legal question presented in this case, we do not and cannot dispute the suffering that these families have experienced or the gravity of their loss. However, the role of the judicial branch here is to apply established rules of law to the constitutional issue presented. As illustrated by prior judicial decisions that reviewed retroactive statutes, many legislative ideas may be implemented only prospectively. *See Bradley*, 62 Wis. 2d 432; *Hunter v. School Dist. of Gale-Ettrick-Trempeleau*, 97 Wis. 2d 435, 293 N.W.2d 515 (1980); *Noll*, 100 Wis. 2d 650; *Martin*, 192 Wis. 2d at 212.

¶ 18. „ We turn then to apply the balancing test set forth in *Martin*. First, we consider the private interests overturned by this retroactive legislation, including any unfairness inherent in its application. ANPAC contends that its private rights are analogous to those protected from retroactive legislation in *Martin*. We agree.

■■

¶ 19. In *Martin*, we held that at the time of the injury the plaintiffs had a right pursuant to Wis. Stat. ch. 655 (1986) to unlimited damages and that this right could not be abrogated by retroactive legislation. *Martin*, 192 Wis. 2d at 206. We cited our prior holdings in *Noll* and *Bradley* for the proposition that the right to recover a particular measure of damages is fixed on the date of injury. *Id.*

¶ 20. ANPAC contends that it, too, possessed a substantive right to have its liability fixed on the date of injury. ANPAC asserts that at the time of the injury the Neimans accrued a right to recover up to $150,000 under Wis. Stat. § 895.04(4); ANPAC's exposure to lia-

bility for damages accrued at that same maximum level. These accrued rights are unsettled by the retroactive aspect of § 895.04(4). We agree.

¶ 21. ANPAC further points out that this court rejected retroactive application of amendments to the wrongful death statute in *Bradley, Quinn v. Chicago, Milwaukee, & St. Paul Railway Co.*, 141 Wis. 497, 500, 124 N.W.2d 653 (1910), and *Keeley v. Great Northern Railway Co.*, 139 Wis. 448, 121 N.W.2d 167 (1909). In our 1995 decision in *Martin*, this court rejected retroactive application of a cap on noneconomic damages in a medical malpractice action created by 1985 Wis. Act 340. The United States Supreme Court has stated that one of the concerns about retroactive statutes is that "[t]he Legislature's unmatched powers allow it to sweep away settled expectations suddenly and without individualized consideration." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 266 (1994). Defendants such as ANPAC, as well as individuals who have purchased a specific level of insurance, would reasonably rely upon the law as set forth by the courts and the legislature. The retroactive application of 1997 Wis. Act 89 deprived ANPAC, as well as other defendants in tort actions, of a meaningful notice of the potential increase in exposure to claims or an opportunity to increase premiums to pay the expense of this increased exposure.

¶ 22. An individual who purchased insurance in reliance upon the terms of Wis. Stat. § 895.04(4) and this court's decisions regarding the constitutionality of retroactive legislation, may not have sufficient coverage for liability in wrongful death claims if the amendment to the statute is applied retroactively. For example, an individual insured for $250,000 could now face a $500,000 judgment in an action based upon the

wrongful death of a minor. Had the defendants antici-
pated that a greater liability could be imposed, he or
she may have altered their conduct accordingly and
purchased greater insurance coverage. The result for
ANPAC, and other insurers and insureds, is that the
retroactive change in law unfairly overturns settled
expectations.

¶ 23. We turn then to the second prong of the
*Martin* test and examine whether the public purpose
for this retroactive application of the statute outweighs
the private interests it overturns. In *Martin* we noted
that the balancing test being employed in our due pro-
cess analysis was similar to that test used in *Chappy*.
*Martin*, 192 Wis. 2d at 201 n.8 (citing *Chappy*, 136 Wis.
2d at 192–94). In *Chappy*, the litigants challenged a
statute as unconstitutional under the contract clause of
the United States and Wisconsin Constitutions.
*Chappy*, 136 Wis. 2d at 185–86. The balancing test
employed in *Chappy* included an examination of the
public purpose behind the statute. *Id.* We stated that
the public purpose must be "significant and legitimate"
and "directed towards remedying a broad and general
social or economic problem." *Id.* at 187–88. As in the
*Chappy* analysis, the public purpose supporting retro-
activity under a due process analysis must also be
substantial, valid and intended to remedy a general
economic or social issue.

¶ 24. ANPAC contends that there is no public
purpose that supports the retroactive increase in
wrongful death limits for loss of society and compan-
ionship. The Neimans argue that the legislative history
identifies several public purposes for the retroactive
change, including full compensation for loss of society
and companionship, deterrence of negligent conduct,

and adequate legal representation. We consider each of these in turn.

██

¶ 25. First, the Neimans correctly point out that it is the policy of tort law in Wisconsin to provide full compensation to those who are injured by the negligent conduct of another. *Heath v. Zellmer*, 35 Wis. 2d 578, 600, 151 N.W.2d 664 (1967). However, a wrongful death claim is a cause of action created by statute, and the right to recover damages as well as the total amount of recovery is restricted to what is enumerated in the statute. *Chang v. State Farm Mut. Auto. Ins. Co.*, 182 Wis. 2d 549, 560–61, 514 N.W.2d 399 (1994).

¶ 26. Prior to the passage of 1997 Wis. Act 89, the legislature had made a deliberate judgment regarding what maximum amount could be awarded by statute for the loss of society and companionship in such an action. The legislature has made this type of assessment many times over the past decades.[6] Each time the legislature amended the wrongful death statute, it made a determination as to what amount of damages would be appropriate for loss of society and companionship. Thus, wrongful death damages for the loss of society and companionship was not a new type of injury being provided a remedy, nor was the extent of the loss experienced by the plaintiffs unforseeable prior to the legislature acting in 1997 Wis. Act 89. The remedy fixed by statute before the amendment was enacted was the legislature's best judgment at the time as to

---

[6] For example, prior to the enactment of 1997 Wis. Act 89, the legislature increased statutory damage limits for the loss of society and companionship in a wrongful death claim in § 1, ch. 548, Wis. Laws 1949; ch. 194, Wis. Laws 1959; ch. 436, Wis. Laws 1969; ch. 287, Wis. Laws 1975; ch. 166, Wis. Laws 1979; 1983 Wis. Act 315; 1991 Wis. Act 308.

what maximum amount of damages fully compensates for loss of society and companionship. As a cause of action created by statute, and expressing the legislature's judgment as to what remedy should be available for loss of society and companionship, the terms of the statute at the time of the accident define full compensation.

¶ 27. Next, the Neimans assert that the retroactive application of the increase in damages will deter negligence. The prospect of liability for tort damages is an incentive for individuals to act with the level of due care that the law demands. However, retroactive application of an increase in damage limits for loss of society and companionship cannot impact negligence that has already occurred. Increasing the potential penalties for negligently causing injury might prospectively change future behavior, but not past behavior. Arguably these results may be suited to supporting a prospective change in wrongful death damages, but we find it unpersuasive here.

¶ 28. Finally, we agree with the Neimans that access to the courts and legal counsel is essential to curb negligence and assure that those who negligently injure another are made to be responsible for the damages they cause. Tort litigation involves complex legal and factual issues and the record indicates that the litigants may incur significant costs. This again, however, is a persuasive rationale for prospectively increasing the amount of damages for a wrongful death claim, not retroactive application.

¶ 29. Retroactive application will not expand access to justice by making it easier for individuals to obtain legal representation where, as here and in other pending claims, the plaintiffs already have retained legal counsel. Claims arising, but not filed, before the

1998 amendment to the wrongful death statute fall in numbers as the statute of limitation tolls for bringing such an action. As a result, this public purpose is important, but does not support a broad public policy purpose for retroactivity.

¶ 30. All of the public interests identified would arguably support prospective application of an increase in damages for loss of society and companionship; however, these reasons provide weak support for retroactive increases in damages. In *Noll*, a majority of this court concluded that a retroactive increase in worker's compensation benefits was unconstitutional. *Noll*, 100 Wis. 2d at 653–54. The dissent in *Noll* argued that inflationary pressures justified retroactive increase in worker's compensation. *Id.* at 667 ("[T]he public purpose to be served by the statute is to protect disabled workers in an inflationary economy.") No such pressure, economic or otherwise, appears to support the retroactive increase in damages for loss of society and companionship. The litigants do not argue that the limits in effect prior to enactment of 1997 Wis. Act 89 were so low as to be unconscionable.

¶ 31. In sum, the public interests served by retroactive application of the increase of wrongful death limitations do not support abrogation of the settled expectations that accrued at the time of the accident. We conclude, therefore, that ANPAC has established beyond a reasonable doubt that the retroactive application of the statute violates due process.

*By the Court.*—The judgment of the circuit court is reversed.

¶ 32. ANN WALSH BRADLEY, J. *(dissenting)*. The majority acknowledges the presumption of constitutionality but fails to apply it to the retroactivity provision of 1997 Wis. Act 89. Had it applied the presumption, the legislation would pass constitutional muster. Even under the *Martin* test that the majority purports to apply, the retroactive application of Wis. Stat. § 895.04(4) must be upheld.

¶ 33. Retroactive legislation is presumed constitutional. *Martin v. Richards*, 192 Wis. 2d 156, 200, 531 N.W.2d 70 (1995). Challengers bear a heavy burden to "prove the law to be unconstitutional beyond a reasonable doubt." *Jackson v. Benson*, 218 Wis. 2d 835, 853, 578 N.W.2d 602 (1998); *State ex rel. Hammermill Paper Co. v. LaPlante*, 58 Wis. 2d 32, 46–47, 205 N.W.2d 784 (1973). Despite the continued validity of these principles, the majority pays only lip service to the existence of the presumption and fails to demonstrate the application of the burden of proof.

¶ 34. Instead, the majority attempts to undercut the presumption of constitutionality by implying that the unsettling effect of retroactive legislation and the suspicion with which it is viewed in some way diminish the import of the presumption. Majority op. at ¶ 16. However, this misses the mark.

¶ 35. The unsettling effect and suspicion surrounding retroactive legislation explain the existence and application of the balancing test. Although retroactive legislation may be viewed with suspicion, constitutional restrictions on such legislation "are of limited scope." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 267 (1994). Thus, the presumption of constitutionality and the burden of proof remain unaffected as part of the "established legal framework" within which the *Martin* balancing test occurs. Majority op. at ¶ 15. Had

the majority applied the presumption, the retroactive application of Wis. Stat. § 895.04(4) would have survived the present constitutional challenge.

¶ 36. Having failed to apply the presumption of constitutionality, the majority also fails to apply the *Martin* test. In *Martin*, this court set forth the balancing test we must undertake in an analysis of retroactive legislation: "[W]e must weigh the public interest served by the retroactive statute against the private interests that are overturned by it." *Martin*, 192 Wis. 2d at 201.

¶ 37. Applying the balancing test, the *Martin* court concluded that the private interests abrogated by the retroactive statute that placed a cap on non-economic damages far outweighed the public interests served by the statute. As to the first part of its analysis, the court noted the "minimal, if any, public interest served by applying the retroactive cap" to limit a tort victim's recovery for damages. *Id.* at 211. The court concluded that aside from the "generic comments" offered in favor of caps on non-economic damages, there was a dearth of evidence supporting the assertion that the cap would lower medical malpractice costs or ensure health care in the future. *Id.*

¶ 38. The *Martin* court then examined the private interests at stake, including considerations of fundamental fairness, and observed the significant interest in preserving the substantive right of a tort victim to collect unlimited damages. *Id.* at 198. Retroactive application of the cap on damages would impair a fixed right to unlimited damages that had previously vested to the most severely injured of tort victims. *Id.* at 209. Balancing the two competing interests, the *Martin* court held the statute unconstitutional.

¶ 39. In the present case, the inverse situation exists: a dubious private interest balanced against significant public interests. The majority first considers the private interests affected by the retroactive legislation. It recognizes the private interests of ANPAC but primarily focuses its discussion on the private interests of the individual who may purchase insurance in reliance upon the cap on damages under the prior statute. Majority op. at ¶ 22.

¶ 40. At first blush, the majority's discussion holds some appeal. Upon closer examination, however, the discussion evades the reality that loss of society and companionship represents only one of several items of damages that may be attributable to the tortfeasor. More often than not, loss of society and companionship is coupled with other items of damages, including past and future pain and suffering, past and future wage loss, or past and future medical expenses. Generally, the exposure to financial liability under these types of damages far outweighs the financial exposure attributable to loss of society and companionship.

¶ 41. The suggestion is simplistic that insureds rely on reduced coverage because of the existence of the $150,000 cap on loss of society and companionship claims. There is no evidence that the amount of the damage cap for loss of society and companionship in and of itself was, or likely would have been, a consideration in determining the level of underinsured motorist coverage purchased.

¶ 42. Likewise, there is no evidence to support the majority's suggestion that the retroactive legislation frustrates an insurer's reasonable expectations of its exposure to liability. Majority op. at ¶ 21. Insurers like ANPAC sell policies with varying levels of cover-

age and charge premiums accordingly. When an insurer sells a certain level of coverage, be it $500,000 or $250,000 per person, its limit of liability is fixed at that amount.

¶ 43. This limit does not parse claims for loss of society and companionship from claims for past and future medical expenses or from claims for past and future wage loss. The exposure to liability is not increased beyond the level for which the insurer contracted and retained a premium. Here the record reflects that the limit of liability was $250,000 and the premium charged was $33. Nothing in the record suggests that the premium was in any way affected to account for the $150,000 cap on loss of society and companionship. Thus, any assertion of ANPAC's reliance to its detriment is tenuous.

¶ 44. In the absence of evidence in the record, the majority's claim is unpersuasive that the increase in caps will invade substantive vested rights of individual insureds or the insurers. However, it is against this unpersuasive premise that the majority then examines the public interests at stake.

¶ 45. The majority next identifies the public interests potentially served by this legislation, each of which it then dismisses. First, the majority concedes that tort law is intended to provide full compensation to injured parties. Majority op. at ¶ 25. However, the majority then attempts to reconcile its concession by deferring to the legislature's imposed limits on recovery in various re-formulations of the wrongful death statute. Majority op. at ¶¶ 25–26. According to the majority, since the legislature set the maximum damage amount at $150,000 at the time of the plaintiff's injury, that amount is necessarily full compensation.

¶ 46. The majority's deference to the policy choices of the legislature is at odds with the majority's simultaneous disapproval of the legislature's choice to enact retroactive legislation affording tort victims a greater measure of damages. A determination that the legislature is the final arbiter of determining compensation cannot also conclude that the legislature has no power to modify the amount of compensation as it sees fit.

¶ 47. Another public interest, access to the courts and legal counsel, is acknowledged by the majority. Yet, the majority misses its significance. The majority suggests that increasing the potential value of a wrongful death cause of action, so as to make representation by counsel more likely, is an interest served only by prospective legislation. Majority op. at ¶ 28.

¶ 48. The legislation at issue in this case was enacted in April 1998. Assuming a three-year statute of limitations, there still exist causes of action that can be brought, but that might not be litigated, because the potential for recovery remains so limited. As in the present case, if the wrongful death damages are sought in a complex automobile accident case or a medical malpractice case, and no other damages such as wage loss or pain and suffering are available, it may be difficult to find an attorney willing to undertake incurring the enormous costs of trial preparation when faced with such a limited potential for recovery. Such litigation often requires the hiring of expert witnesses, deposition costs, and days of preparation for a lengthy trial. The costs and attorneys fees alone could easily exceed the cap.

¶ 49. Given their proper due, the public interests served by the retroactive legislation at issue far outweigh the private interests. Unlike in *Martin*, where

this court found the "minimal public interest" to be outweighed by a significant private interest, 192 Wis. 2d at 211, this case presents us with private interests of a dubious nature outweighed by legitimate and significant public interests. Adding the presumption of constitutionality to this analysis tips the scales even farther from the majority's conclusion.

¶ 50. The majority neither applies the presumption of constitutionality nor properly applies the *Martin* test to uphold this retroactive legislation. I conclude that ANPAC has failed to meet its burden of proving the challenged legislation unconstitutional beyond a reasonable doubt. Accordingly, I dissent.

¶ 51. I am authorized to state that SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE, joins this dissenting opinion.