Barbara A. SCHULTZ, individually and as Special Administrator for the Estate of Lindsey Schultz, and Roger Schultz, individually, Mitchell Schultz, individually, Russell Schultz, individually, and 3M Medical Plan, Plaintiffs-Respondents,†

v.

Roger D. NATWICK, M.D., ORCC, Inc., f/k/a Red Cedar Clinic, S.C., d/b/a Red Cedar Clinic, Red Cedar Clinic-Mayo Health System, Ltd., and Physicians Insurance Company of Wisconsin, Inc., Defendants-Appellants,

WISCONSIN PATIENTS COMPENSATION FUND, Defendant-Co-Appellant.

Court of Appeals

*No. 00–0361. Submitted on briefs February 12, 2001.—Decided November 21, 2001.*

2001 WI App 281

(Also reported in 638 N.W.2d 319.)

† Petition to review granted 2-19-02.

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Michael B. Van Sicklen* and *Michael S. Heffernan* of *Foley & Lardner* of Madison.

On behalf of the defendant-co-appellant, the cause was submitted on the briefs of *Mark E. Larson* of *Gutglass, Erickson & Bonville, S.C.* of Milwaukee.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief of *Howard R. Orenstein* and *Terry L. Wade* of *Robins, Kaplan, Miller & Ciresi L.L.P.* of Minneapolis, Minnesota.

Brief of amicus curiae was filed by *James E. Doyle,* attorney general and *John S. Greene,* assistant attorney general on behalf of the State of Wisconsin.

Before Roggensack, Deininger and Lundsten, JJ.

¶ 1. ROGGENSACK, J.   In May 1998, Barbara and Roger Schultz filed a medical malpractice action against Dr. Roger Natwick, his employer and his insurers (Natwick) for the wrongful death of their daughter in December 1995. Natwick seeks review of the circuit court's ruling that 1997 Wis. Act 89, which increased caps on damages for loss of society and companionship in wrongful death actions, applies to the Schultzes' claims. We conclude that the retroactive application of increased damages for loss of society and companionship in wrongful death actions violates a tort defendant's due process rights. Accordingly, Natwick's liability for loss of society and companionship is capped at $150,000 under Wis. Stat. § 895.04(4) (1995–96),[1] which was the statute in effect on the date the Schultzes' cause of action accrued.

## BACKGROUND

¶ 2.   Thirteen-year-old Lindsey Schultz died on December 1, 1995 from the complications of an appen-

---

[1] All references to the Wisconsin Statutes are to the 1995–96 version, unless otherwise noted.

dectomy performed by Dr. Roger Natwick. Lindsey's parents and siblings filed a wrongful death action on May 11, 1998, naming Natwick, his employer and his insurers as defendants. Natwick's primary insurer is Physicians Insurance Company of Wisconsin. The Wisconsin Patients Compensation Fund was joined as a defendant pursuant to WIS. STAT. § 655.27(5) and is liable to the extent that medical malpractice liability exceeds the policy limits of the primary insurer.

¶ 3. The parties reached a stipulation in which they agreed that (1) Natwick would not contest liability, and (2) if the case were tried to a jury, the Schultz family members would be awarded damages for loss of society and companionship in an amount no less than $500,000. Natwick, however, reserved the right to appeal the circuit court's ruling that damages for loss of society and companionship were capped at $500,000, rather than at $150,000.

¶ 4. The parties' dispute over the applicable cap on damages for loss of society and companionship can be traced to a change in the law that occurred between the date of Lindsey's death and the date the Schultzes filed their suit. On December 1, 1995, the date Lindsey died, the Wisconsin statutes provided that parents of the deceased in a wrongful death action could recover a maximum of $150,000 for loss of society and companionship. *See* WIS. STAT. § 895.04(4). However, on April 13, 1998, the legislature enacted 1997 Wis. Act 89, which amended § 895.04(4) to increase the cap on such damages to $350,000 for the death of an adult and $500,000 for the death of a minor.[2]

---

[2] Lindsey's mother was a primary advocate of the legislation and worked with legislators to gain support for the bill. In addition to increasing the damages caps, 1997 Wis. Act 89 added

¶ 5. The Act provided that the increased caps would first apply to "actions commenced on the effective date of this subsection." 1997 Wis. Act 89, § 4. The Act became effective on April 28, 1998, and the Schultzes filed their suit on May 11. Thus, according to the express terms of the Act, the cap on damages for loss of society and companionship in this case would be $500,000.

¶ 6. Natwick argues that applying the increased caps to a cause of action that accrued prior to the effective date of the Act is unconstitutional under the due process clauses of the Wisconsin and United States Constitutions. Although the circuit court rejected this argument, the Wisconsin Supreme Court subsequently invalidated retroactive application of the increased caps in a case that, like the Schultzes' action, involved a pre-Act injury and a complaint filed after April 28, 1998. *See Neiman v. American Nat'l Prop. & Cas. Co.*, 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160.

¶ 7. The Schultzes contend that *Neiman* involved only an "as applied" challenge to the statute and that facts unique to this case command a different outcome. Natwick contends that *Neiman* was a facial challenge to the section of 1997 Wis. Act 89 that applied the increase in wrongful death damages to events occurring before the effective date of the Act. We agree with Natwick, and therefore, we reverse the judgment of the circuit court.

---

minor siblings of the deceased to the class of persons who are permitted to bring a wrongful death claim and recover damages for loss of society and companionship. The issue of whether Lindsey's siblings are proper parties in this action is not before the court.

## DISCUSSION

### Standard of Review.

■

¶ 8. The constitutionality of retroactive legislation presents a question of law, which we review *de novo. Neiman,* 2000 WI 83 at ¶ 8.

### Retroactive Increase.

■

¶ 9. It is undisputed in this case both that the Schultzes' cause of action accrued on December 1, 1995 and that the Schultzes commenced this action after the April 28, 1998 effective date of 1997 Wis. Act 89. In addition, there is no question that the legislature intended the increase in wrongful death damages to apply retroactively in these circumstances. *See Neiman,* 2000 WI 83 at ¶ 11. Therefore, the sole issue presented is whether retroactive application of the increased damages violates Natwick's constitutional right to due process.[3]

■

¶ 10. The due process test that applies here required the supreme court to determine whether the legislature had a rational basis for providing for retroactive application of an increase in wrongful death damages. *Id.* at ¶ 9. The analysis involves "weighing the public interest served by retroactively applying the statute against the private interest that retroactive

[3] The Wisconsin Supreme Court has held that the due process clause of the Wisconsin Constitution is substantially equivalent to its counterpart in the federal constitution. *Reginald D. v. State,* 193 Wis. 2d 299, 307, 533 N.W.2d 181, 184 (1995).

application of the statute would affect." *Matthies v. Positive Safety Mfg. Co.*, 2001 WI 82, ¶ 27, 244 Wis. 2d 720, 628 N.W.2d 842 (citing *Martin v. Richards*, 192 Wis. 2d 156, 201, 531 N.W.2d 70, 88–89 (1995)). "[T]he public purpose supporting retroactivity . . . must . . . be substantial, valid and intended to remedy a general economic or social issue." *Neiman*, 2000 WI 83 at ¶ 23.[4]

¶ 11.  Natwick's primary argument is that we need look no further than *Neiman* to resolve this case because the supreme court has already conducted the required balancing of private and public interests involved in the legislature's attempt to retroactively increase wrongful death damages. The Schultzes contend that *Neiman* was an "as applied" constitutional challenge and therefore, we must balance the particular private interests of Natwick and his insurers in this case with the public interests served by retroactivity. As explained below, we conclude that the supreme court's decision in *Neiman* is based on a facial challenge to the section of 1997 Wis. Act 89 that applied the increase in wrongful death damages to events occurring before the effective date of the Act.

¶ 12.  The supreme court's decision in *Neiman* expressly set forth and balanced the public interest served by retroactive application of 1997 Wis. Act 89 and the private interests affected by it. Chief among the private interests affected by retroactivity is the sub-

---

[4] In setting forth the balancing test applied to retroactive legislation, the supreme court stated that retroactive legislation "is viewed with some degree of suspicion." *Martin v. Richards*, 192 Wis. 2d 156, 201, 531 N.W.2d 70, 88 (1995). Notwithstanding the suspicious eye cast upon such statutes, the unconstitutionality of retroactive legislation must still be proven beyond a reasonable doubt. *Neiman v. American Nat'l Prop. & Cas. Co.*, 2000 WI 83, ¶¶ 16, 31, 236 Wis. 2d 411, 613 N.W.2d 160.

stantive right of defendants in wrongful death actions to have their liability fixed on the date of injury. *See Neiman,* 2000 WI 83 at ¶ 20.[5] This substantive right flows from the reliance of the defendants in such cases on the liability limits set forth by statute. *Id.* at ¶¶ 13, 25. Applying the increased damages caps enacted in 1998 affects a tort defendant's substantive right to have liability fixed on the date of injury because it multiplies the tortfeasor's maximum liability for loss of society and companionship. Where the deceased is a minor (as in *Neiman* and in this case), the increased caps would more than triple a tortfeasor's total exposure to such damages.

¶ 13. After identifying the private interests at stake, the court in *Neiman* examined the public purpose served by retroactive application of the statute. The asserted public interests included full compensation for the loss of society and companionship, the need for tort victims to have access to adequate legal representation and deterrence of negligent conduct. The court concluded that "[a]ll of the public interests identified would arguably support prospective application of an increase in damages for loss of society and compan-

---

[5] *Neiman* involved a first-party claim against the plaintiffs' underinsured motorist coverage. *Neiman,* 2000 WI 83 at ¶ 5. The tortfeasor and the tortfeasor's liability insurer were not before the court. *Id.* at ¶¶ 4–7. As a result, the *Neiman* court often refers to the private interests of the plaintiffs' insurer. In this case, the tortfeasor is a party to the action. And, because any insurer's liability for damages for loss of society and companionship is inseparable from the tortfeasor's liability, we focus primarily on the private interests of the alleged tortfeasor, here Roger Natwick. We further note that WIS. STAT. § 895.04(4) determines the extent of the tortfeasor's liability and does not differentiate between insured and uninsured tortfeasors.

ionship; however, these reasons provide weak support for retroactive increases in damages." *Id.* at ¶ 30. Particularly addressing the claim that increased damages were necessary to provide full compensation to tort victims, the court stated:

> The remedy fixed by statute before the amendment was enacted was the legislature's best judgment at the time as to what maximum amount of damages fully compensates for loss of society and companionship. As a cause of action created by statute, and expressing the legislature's judgment as to what remedy should be available for loss of society and companionship, *the terms of the statute at the time of the accident define full compensation.*

*Id.* at ¶ 26 (emphasis added).

¶ 14. Having identified the relevant interests on each side of the balance, the court then concluded that the public interests served by retroactive application of the increased caps on damages "do not support abrogation of the settled expectations that accrued at the time of the accident." *Id.* at ¶ 31. Accordingly, the court held that the defendant-insurer established beyond a reasonable doubt that retroactive application of increased damages for loss of society and companionship violates due process. *Id.*

¶ 15. The parties here agree that *Neiman* does not expressly state whether the court was addressing a "facial" or an "as applied" challenge to retroactive application of the increased damages cap. However, for several reasons, we conclude that *Neiman* involved a facial challenge to the statute.

¶ 16. First, we conclude that *Neiman* facially invalidated the Act's retroactive increase in damages because to hold otherwise would suggest that tortfeasors' maximum liability could be made to depend on the

unique circumstances surrounding their insurance contracts, or that insured tortfeasors, uninsured tortfeasors and underinsured tortfeasors could incur different maximum liabilities for the same negligent act. WISCONSIN STAT. § 895.04(4), however, has nothing to do with insurance;[6] it defines the extent of a wrongful death plaintiff's right to recover damages for loss of society and companionship and, as the opposite side of the same coin, a tortfeasor's liability for such damages. Under well-established law, both the right to recover and the extent of liability accrue on the date of injury. And, as the supreme court recognized, this rule of law gives rise to a substantive right that is affected by a retroactive increase in potential liability. *Neiman*, 2000 WI 83 at ¶ 13. *Neiman* does not leave the door open for lower courts to re-balance affected interests on a case-by-case basis to assess the particulars of a tortfeasor's insurance policy.

¶ 17.  Second, although the Schultzes reasonably argue that the identification and balancing of "private interests" implies a fact-specific analysis and a case-by-case inquiry into actual harm, we conclude that the supreme court's analysis in *Neiman* was a broader test of the statute itself. As the supreme court has stated, the balancing test applied in *Martin*, *Neiman* and *Matthies* is, at heart, a rational basis test that is used to assess the constitutionality of retroactive legislation.

---

[6] It is certainly true that changing the rules governing a tortfeasor's liability will affect private interests that are based on the fact and extent of that liability. But, these interests derive from the fact of liability, which is independent of a tortfeasor's status as an insured. We read *Neiman* to invalidate a retroactive increase in the *tortfeasor's* liability, rather than invalidating *the effect* of increased tortfeasor liability on the contractual liability of the plaintiffs' insurance carrier.

*Matthies*, 2001 WI 82 at ¶ 27; *Neiman*, 2000 WI 83 at ¶ 9. Thus, while the balancing of interests performed in *Neiman* is a wrinkle on the rational basis test that is unique to cases involving retroactive legislation,[7] the core due process inquiry remains unchanged. That is, the *Neiman* balancing test is a framework used to determine whether the legislature has acted in an arbitrary and irrational way. *See Thorp v. Town of Lebanon*, 2000 WI 60, ¶ 45, 235 Wis. 2d 610, 612 N.W.2d 59.

¶ 18.   The *Neiman* court's analysis of the relevant interests was not fact-specific and did not inquire into the actual harm suffered by the defendant-insurer. Instead, the primary private interest identified by the court was an interest that is universal to all tort defendants:   the substantive right, in cases where damages are specified by statute, to have the maximum amount of liability fixed as of the date of injury. The supreme court then expressly determined that the public interests served by a retroactive increase in wrongful death damages were "weak" and that they "do not support abrogation of the settled expectations that accrued at the time of the accident." *Neiman*, 2000 WI 83 at ¶ 31. Given the broad interests identified and

---

[7] Compare the *Neiman* rational basis test with, *e.g., Aicher v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶ 57, 237 Wis. 2d 99, 613 N.W.2d 849 (holding that courts must sustain a statute unless we conclude that "it is 'patently arbitrary' and bears no rational relationship to a legitimate government interest") and *Cornell Univ. v. Rusk County*, 166 Wis. 2d 811, 825–26, 481 N.W.2d 485, 491 (Ct. App. 1992) (holding that the test for substantive due process is "whether the statutes have a reasonable and rational relationship to their purpose, and whether the purpose is a proper one").

balanced in *Neiman* to determine whether the legislation had a rational basis, we see no room for further case-by-case balancing.

¶ 19. Third, *Neiman* reached the supreme court on a party's motion to bypass the court of appeals. *See* WIS. STAT. § 808.05 (1999–2000). We doubt that the supreme court accepted the case in that posture solely to determine the rights of litigants who had one particular type of insurance coverage. Instead, we conclude that the court's references to "other defendants in tort actions," *Neiman*, 2000 WI 83 at ¶ 21, and "other insurers and insureds," *id.* at ¶ 22, and the court's balancing of broadly applicable private interests demonstrate that the court viewed the case as a facial challenge to the statute.

## CONCLUSION

¶ 20. We conclude that the retroactive application of increased damages for loss of society and companionship in wrongful death actions violates a tort defendant's due process rights. Therefore, Natwick's liability for loss of society and companionship is capped at $150,000 under WIS. STAT. § 895.04(4) (1995–96), which was the statute in effect on the date the Schultzes' cause of action accrued. Accordingly, we reverse the judgment and order of the circuit court.

*By the Court.*—Judgment and order reversed.