Barbara A. SCHULTZ, individually and as Special Administrator for the Estate of Lindsey Schultz, and Roger Schultz, individually, Mitchell Schultz, individually, Russell Schultz, individually, and 3M Medical Plan, Plaintiffs-Respondents-Petitioners,

v.

Roger D. NATWICK, M.D., ORCC, Inc., f/k/a Red Cedar Clinic, S.C., d/b/a Red Cedar Clinic, Red Cedar Clinic-Mayo Health System, Ltd., and Physicians Insurance Company of Wisconsin, Inc., Defendants-Appellants,

WISCONSIN PATIENTS COMPENSATION FUND, Defendant-Co-Appellant.

Supreme Court

*No. 00–0361. Oral argument September 11, 2002.—Decided November 19, 2002.*

2002 WI 125

(Also reported in 653 N.W.2d 266.)

For the plaintiffs-respondents-petitioners there were briefs by *Terry L. Wade* and *Robins, Kaplan, Miller & Ciresi LLP,* Minneapolis, Minnesota, and oral argument by *Terry L. Wade.*

For the defendants-appellants there was a brief by *Michael B. Van Sicklen* and *Foley & Lardner,* Madison, and oral argument by *Michael B. Van Sicklen.*

For the defendant-co-appellant there was a brief by *Mark E. Larson* and *Gutglass, Erickson, Bonville, Seibel & Falkner, S.C.,* Milwaukee, and oral argument by *Mark E. Larson.*

An amicus curiae brief was filed by *Timothy J. Aiken, David M. Skoglind, and Williams C. Gleisner, III,* on behalf of the Wisconsin Academy of Trial Lawyers.

¶ 1. SHIRLEY S. ABRAHAMSON, C.J. This is a review of a published court of appeals decision, *Schultz v. Natwick,* 2001 WI App 281, 249 Wis. 2d 317, 638 N.W.2d 319.

¶ 2. The court of appeals reversed the judgment of the Circuit Court for Dunn County, Rod W. Smeltzer, Judge. The circuit court entered judgment for the plaintiffs.[1] The circuit court concluded that the legislature's retroactive increase of the cap on damages for loss of society and companionship in wrongful death cases, from $150,000 to $500,000, was constitutional.[2] The circuit court judgment preceded *Neiman v. American National Property & Casualty Co.,* 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160. In *Neiman* this court applied the balancing test set forth in *Martin v. Richards,* 192 Wis. 2d 156, 531 N.W.2d 70 (1995), and declared the retroactive increase of the cap on these damages unconstitutional.

¶ 3 The court of appeals reversed the judgment of the circuit court. Relying on *Neiman,* the court of appeals held that the $150,000 cap, not the $500,000 cap, applies in the present case, because the retroactive increase of the cap on damages recoverable for loss of society and companionship in wrongful death actions

---

[1] The plaintiffs are Barbara A. Schultz, individually and as Special Administrator for the Estate of Lindsey Schultz; Roger Schultz, individually; Mitchell Schultz, individually; Russell Schultz, individually; and 3M Medical Plan.

[2] *See* 1997 Wis. Act 89, § 4.

violates the due process rights of the defendants in the present case.[3] We affirm the decision of the court of appeals.

¶ 4. The issue presented is whether the retroactive increase of the cap for damages for loss of society and companionship in wrongful death actions enacted by 1997 Wis. Act 89 violates a tortfeasor's constitutional right to due process.[4] More specifically, the issue presented is the applicability of the Neiman decision to the present case.

¶ 5. We conclude, as did the court of appeals, that the *Neiman* decision governs this case. The retroactive increase of the cap on damages for the loss of society and companionship in wrongful death cases enacted by 1997 Wis. Act 89 is unconstitutional. It is unnecessary for courts to apply the *Martin* balancing test anew to the particular facts of every case challenging the constitutionality of the retroactive increase of the cap.

¶ 6. The facts of this case are tragic. Lindsey Schultz died on December 1, 1995, at the age of thir-

---

[3] The defendants are Roger D. Natwick, M.D.; ORCC, Inc., f/k/a Red Cedar Clinic, S.C., d/b/a Red Cedar Clinic; Red Cedar Clinic-Mayo Health System, Ltd.; Physicians Insurance Company of Wisconsin, Inc.; and Wisconsin Patients Compensation Fund.

[4] The Fifth Amendment to the United States Constitution, which applies to the states via the Fourteenth Amendment, provides in pertinent part: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ."

Article I, Section 1 of the Wisconsin Constitution provides: "All people are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted, deriving their just powers from the consent of the governed."

teen, from complications arising out of an appendectomy performed by Dr. Roger Natwick, an employee or agent of Red Cedar Clinic. Lindsey's parents, Barbara and Roger Schultz, and her minor siblings, brought suit against defendants Dr. Natwick, Red Cedar Clinic, and their insurer, Physicians Insurance Company of Wisconsin (PIC). The Wisconsin Patients Compensation Fund (Fund) was joined as a defendant pursuant to Wis. Stat. § 655.27(5) (1995–96).[5]

¶ 7.　The parties agree that the plaintiffs' cause of action for wrongful death accrued on December 1, 1995, the date of the alleged malpractice and the injury. The parties further stipulated that if the case were tried to a jury, the defendants would not contest liability and the plaintiffs would be awarded damages for loss of society and companionship of no less than the $500,000 cap.

¶ 8.　At the time of Lindsey Schultz's death, Wis. Stat. § 895.04(4) (1995–96) placed a cap on damages in wrongful death actions for loss of society and companionship at $150,000.[6] On April 13, 1998, the legislature adopted 1997 Wis. Act 89 at the urging of Lindsey Schultz's mother and others to enable families to pursue fair compensation for their losses. The Schultz family was instrumental in attaining the passage of the new Act. Then-Governor Tommy Thompson called the

---

[5] All subsequent references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

[6] Wisconsin Stat. § 895.04 (1995–96) states:

Plaintiff in wrongful death action . . . (4) Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $150,000 for loss of society and companionship may be awarded to the spouse, children or parents of the deceased.

24

Act the "Justin-Lindsey Bill" in memory of Lindsey Schultz and Justin Sky Millar, who had also died tragically during a medical procedure.[7]

¶ 9. The Act increased the cap on damages in wrongful death cases involving a minor for loss of society and companionship from $150,000 to $500,000.[8] The Act increasing the cap on damages expressly states that it applies to actions "commenced on the effective date" of the amendment, namely April 28, 1998.[9] This provision results in the increased cap applying retroactively to causes of action that accrued prior to April 28, 1998, if the lawsuit is commenced on or after April 28, 1998.

---

[7] *See* Record 27, Ex. E.

[8] The Act also increased the cap on damages in wrongful death cases involving an adult from $150,000 to $350,000. Wisconsin Stat. § 895.04(4) (1995–96) was amended by 1997 Wis. Act 89, § 3 to read as follows:

> Judgment for damages for pecuniary injury from wrongful death may be awarded to any person entitled to bring a wrongful death action. Additional damages not to exceed $500,000 per occurrence in the case of a deceased minor, or $350,000 per occurrence in the case of a deceased adult, for loss of society and companionship may be awarded to the spouse, children or parents of the deceased, or to the siblings of the deceased, if the siblings were minors at the time of death.

In addition to increasing the cap on damages, 1997 Wis. Act 89 added minor siblings of the deceased to the class of persons who are permitted to bring a wrongful death claim and recover damages for loss of society and companionship. The issue of whether Lindsey's siblings are proper parties in this action is not before the court.

[9] 1997 Wis. Act 89, § 4 states: "Initial Applicability: (1) This act first applies to actions commenced on the effective date of this subsection." The effective date of the act was, as stated previously, April 28, 1998.

25

¶ 10. The plaintiffs filed their suit on May 11, 1998. Thus, under the express terms of the Act, the plaintiffs would receive the benefit of the retroactive increase of the cap and their maximum recovery would be set at $500,000.

¶ 11. The plaintiffs urge this court to hold that the retroactive increase of the cap is constitutional as to them. The plaintiffs argue that the *Neiman* decision is limited to its facts. They argue that *Neiman* renders the retroactive increase of the cap unconstitutional only as to the specific claim of the Neimans. They further argue that the *Neiman* decision requires a court to conduct the *Martin* balancing test on a case-by-case basis to each claim for damages for loss of society and companionship that accrued before the effective date of the Act, but that was made in a suit brought on or after the effective date of the Act. The defendants argue that the *Neiman* decision renders the retroactive increase of the cap on these damages unconstitutional for every claim for damages that accrued before the effective date of the amendment.

¶ 12. The interpretation and application of the Neiman decision and the constitutional challenge to the retroactive application of a statute present questions of law that this court determines independent of the circuit court and court of appeals, but benefiting from their analyses.

¶ 13. The facts of the *Neiman* case are substantially similar to those in the present case. Steve and Kristine Neiman lost a child as a result of an automobile accident on September 5, 1995, when the cap on damages for loss of society and companionship was $150,000. The Neimans' claim for underinsured motor-

ist coverage was filed in August 1998, after the effective date of the Act increased the cap to $500,000. The automobile liability insurance company, American National Property and Casualty Company (ANPAC), argued that the retroactive increase of the cap on damages violated its due process rights.[10]

¶ 14. The *Neiman* court assessed the constitutionality of the retroactive cap increase by applying the *Martin* balancing test.[11] Pursuant to *Martin,* the *Neiman* court weighed the public interest served by retroactive application of the Act against the private interests that are overturned by retroactive application of the Act, including an assessment of any unfairness inherent in such application.[12] The court concluded in *Neiman* that a tortfeasor's exposure to liability for damages accrues on the date of injury[13] and that a retroactive increase of the cap on damages unfairly

---

[10] We note, as did the court of appeals, that *Neiman* involved a first-party claim against the plaintiffs' underinsured motorist coverage. The tortfeasor and the tortfeasor's liability insurer were not before the court. As a result, the *Neiman* court often refers to the private interests of the plaintiffs' insurer. In this case, the alleged tortfeasor is a party to the action. The tortfeasor's insurers are also parties. Wisconsin Stat. § 895.04(4) determines the extent of a tortfeasor's liability and does not differentiate between insured and uninsured tortfeasors. *See Schultz v. Natwick,* 2001 WI App 281, ¶ 12 n.5, 249 Wis. 2d 317, 638 N.W.2d 319.

[11] *Martin v. Richards,* 192 Wis. 2d 156, 201, 531 N.W.2d 70 (1995) ("To determine whether a retroactive statute comports with due process we must weigh the public interest served by the retroactive statute against the private interests that are overturned by it.").

[12] *Neiman v. Am. Nat'l Prop. & Cas. Co.,* 2000 WI 83, ¶ 15, 236 Wis. 2d 411, 613 N.W.2d 160.

[13] *Id.,* ¶ 20.

alters a tortfeasor's accrued right to fixed damages on that date.[14] In addition, the court determined, over a two-justice dissent, that the public interest served by a retroactive increase of the cap on damages did not outweigh the harm caused by the unsettling of a tortfeasor's expectations.[15] Thus, the *Neiman* court held that the retroactive application of the increase of the cap on damages to a claim that accrued before the effective date of the Act was unconstitutional.

¶ 15.　The *Neiman* decision did not expressly state whether the court was considering a challenge to the retroactive increase of the cap on the particular facts of that case alone. The language and logic of the *Neiman* decision, however, plainly extend to all cases affected by the retroactive increase of the cap enacted by 1997 Wis. Act 89 and are not limited to the facts of the *Neiman* case.

¶ 16.　The language of the *Neiman* decision specifically extends to parties beyond the Neimans and ANPAC. The *Neiman* decision expressly held that "a retroactive increase in damages available pursuant to Wis. Stat. § 895.04(4) unfairly alters settled property rights without achieving a broad public benefit. As a result, the retroactive element of the statute is unconstitutional under our test set forth in *Martin v. Richards* (citation omitted)."[16]

¶ 17.　Furthermore, the *Neiman* decision ex- plained:

---

[14] *Id.*, ¶¶ 21–22.

[15] *Id.*, ¶¶ 24–31. Justice Ann Walsh Bradley (joined by the author of this opinion) dissented, asserting that the public interests in full compensation to injured parties and access to the courts and legal counsel outweigh the private interests. *Id.*, ¶¶ 45–49.

[16] *Id.*, ¶ 2.

Defendants such as ANPAC, as well as individuals who have purchased a specific level of insurance, would reasonably rely upon the law as set forth by the courts and the legislature. The retroactive application of 1997 Wis. Act 89 deprived ANPAC, as well as other defendants in tort actions, of a meaningful notice of the potential increase in exposure to claims or an opportunity to increase premiums to pay the expense of this increased exposure.

. . . The result for ANPAC, and other insurers and insureds, is that the retroactive change in law unfairly overturns settled expectations.[17]

¶ 18. The plaintiffs rightly point out that in contrast to the language just quoted, some of the language in *Neiman* can be narrowly construed as limiting the holding to Neiman and ANPAC alone. For example, the plaintiffs refer to the following passage framing the issue in the *Neiman* decision: "The sole issue presented for review is whether retroactive application of the increase in wrongful death damages as provided in 1997 Wis. Act 89 violates ANPAC's due process rights . . . ."[18]

¶ 19. In addition, the plaintiffs point to *Martin*, 192 Wis. 2d 156, and *Matthies v. Positive Safety Manufacturing Co.*, 2001 WI 82, 244 Wis. 2d 720, 628 N.W.2d 842 (applying the *Martin* balancing test), arguing that the language this court uses when applying the *Martin* balancing test indicates a focus on the unfairness to the specific party challenging the retroactive statute.

¶ 20. We agree with the plaintiffs that some of the language in these cases refers to particular litigants and particular facts. One would expect, however, such par-

[17] *Id.*, ¶¶ 21–22.
[18] *Id.*, ¶ 8.

ticularized language. All cases involve particular litigants and particular facts, regardless of the breadth of the holding of the decision. No determination regarding the invalidity of a statute can occur without applying the statute to particular litigants on a specific set of facts.[19]

¶ 21. Accordingly, we must focus not on the passages in *Neiman* referring specifically to Neiman and ANPAC but on the conclusions reached by the *Neiman* court.

¶ 22. The plaintiffs take the position that the *Neiman* decision is intended to govern only those persons and entities similarly situated to the Neimans and ANPAC. The plaintiffs urge that nothing in the *Neiman* decision suggests that its holding extends to *all* possible litigants. The plaintiffs further contend that the *Martin* balancing test requires that a court make an individualized balancing of the parties' particular private interests against the public interest in every case. We do not agree with the plaintiffs that *Martin* and *Neiman* require an individualized balancing of interests in every case.

---

[19] Determining when an "as applied" challenge to the constitutionality of a statute is appropriate and when a "facial" challenge to the constitutionality of a statute is appropriate has long troubled courts and scholars alike. *See, e.g.,* Michael C. Dorf, *Facial Challenges to State and Federal Statutes,* 46 Stan. L. Rev. 235 (1994); Richard H. Fallon, Jr., *As-Applied and Facial Challenges and Third-Party Standing,* 113 Harv. L. Rev. 1321, 1328 (2000); Alfred Hill, *Some Realism About Facial Invalidation of Statutes,* 30 Hofstra L. Rev. 647 (2002); Marc E. Isserles, *Overcoming Overbreadth: Facial Challenges and the Valid Rule Requirement,* 48 Am. U.L. Rev. 359, 421–56 (1998).

██

¶ 23. *Martin* created a two-prong balancing test. Under the first prong, the court considers the private interests overturned by the retroactive legislation in question.[20]

¶ 24. The plaintiffs argue that in *Neiman,* the private interests of the automobile liability insurance company (ANPAC) were unsettled by the retroactive increase of the cap because ANPAC had set its premiums based upon the earlier $150,000 damages cap. According to the plaintiffs, the defendants in the present case, by contrast, especially Dr. Natwick and PIC, neither ordered their affairs nor calculated their coverage based upon the $150,000 cap. PIC issued its insurance policy to Dr. Natwick and Red Cedar Clinic in 1995, when no cap on damages for loss of society and companionship existed in Wisconsin. The plaintiffs therefore assert that the premiums were based upon the possibility of a judgment against either Dr. Natwick or Red Cedar Clinic far in excess of either $150,000 or $500,000. Furthermore, the plaintiffs argue that Dr. Natwick is covered through his policies and excess coverage provided by the Fund, regardless of the amount of the cap imposed, and that the Fund has never identified harm to any of its interests.[21] Consequently, the plaintiffs urge that the defendants' private interests in this case are different from the private interests of ANPAC and other insurers who adjusted

---

[20] *Neiman,* 236 Wis. 2d 411, ¶ 18.

[21] Because we hold that *Neiman* is dispositive of this case and that no re-balancing of interests is required on these facts, we need not address whether any potential harm to the Fund should be considered when weighing the private interests affected by retroactive application of 1997 Wis. Act 89.

31

their premiums to account for the imposition of the original $150,000 cap on damages.

¶ 25. We disagree with the plaintiffs' characterization of the private interests in the *Neiman* decision. The *Neiman* decision did not limit its holding to insurers who set premiums based upon the $150,000 cap for damages or to insureds who bought policies with particular coverage. There was no specific inquiry in *Neiman,* as the dissent in *Neiman* points out, into the actual, particular harm suffered by ANPAC or any insureds.[22] The *Neiman* court engaged in a general discussion of meaningful notice to insureds of a potential increase in exposure to claims and an opportunity to insurers to increase premiums.

¶ 26. While the plaintiffs would have the court focus on the premiums, fees, and assessments charged by PIC and the Fund, the *Neiman* decision assessed private interests by focusing on the fact that insurers and insureds had a right to have their maximum damages fixed at the date the cause of action accrued and concluded that the retroactive increase of the maximum damages unsettled these private interests.[23] Dr. Natwick, PIC, and the Fund in the present case similarly had a right to have their liability fixed on the date of injury and their private interests were unsettled by the retroactive increase of the cap.

¶ 27. The court of appeals correctly noted that the *Neiman* decision assessed private interests "universal to all tort defendants: the substantive right, in cases

---

[22] *Neiman,* 236 Wis. 2d 411, ¶¶ 40–44 (Bradley, J., dissenting).

[23] *Id.,* ¶ 20.

where damages are specified by statute, to have the amount of liability fixed as of the date of injury."[24]

¶ 28. Under the second prong of the *Martin* balancing test, the court examines the public interest served by the retroactive increase of the cap to determine whether the public interest outweighs the private interest it overturns. In *Neiman,* the court identified the public interests purportedly served by the retroactive increase of the cap as "full compensation for loss of society and companionship, deterrence of negligent conduct, and [ensuring] adequate legal representation" for victims.[25] These public interests do not change from litigant to litigant; they remain constant regardless of the particular parties affected.

¶ 29. The *Neiman* court rejected the argument that a retroactive increase of the cap on damages was necessary to fulfill the public policy goal of "full compensation," concluding that the statutory cap on damages in force on the date of injury defined full compensation.[26] The *Neiman* court also concluded that a retroactive increase of the cap on damages was not necessary to deter negligent conduct.[27] Finally, the *Neiman* court also concluded that a retroactive increase of the cap on damages was not necessary to ensure access to the courts and legal counsel for those who have been injured by another's negligence.[28]

¶ 30. The whole tenor and logic of the *Neiman* decision is that "the public interests identified would arguably support prospective application of an increase

[24] *Schultz,* 249 Wis. 2d 317, ¶ 18.

[25] *Neiman,* 236 Wis. 2d 411, ¶ 24.

[26] *Id.,* ¶¶ 25–26.

[27] *Id.,* ¶ 27.

[28] *Id.,* ¶¶ 28–29.

in damages for loss of society and companionship; however, these reasons provide weak support for retroactive increases in damages."[29] Without a stronger public interest underlying the retroactive increase of the cap, it remains unfair, according to *Neiman,* to unsettle tortfeasors' rights to have their liability fixed as of the date the cause of action accrued. The reasoning and conclusions of the *Neiman* decision apply with equal force in the present case.

¶ 31. In addition to the language and logic of the *Neiman* decision, the procedural history of the case provides further evidence that the *Neiman* decision held the retroactive increase of the cap on damages enacted by 1997 Wis. Act 89 unconstitutional in all cases. This court accepted review of *Neiman* on bypass, aware that there were pending cases throughout Wisconsin presenting the issue of the constitutionality of the retroactive feature of the Act.[30] In fact, this court was specifically aware of the claim of the plaintiffs in the present case.[31] At the time the *Neiman* case was

---

[29] *Id.,* ¶ 30.

[30] *Id.,* ¶ 31.

At the time briefs were submitted in *Neiman,* twelve different trial courts had issued decisions on whether the retroactive increase of the cap enacted by 1997 Wis. Act 89 was constitutional. *See* Brief and Appendix of Plaintiffs-Respondents at 1 n.1, *Neiman v. Am. Nat'l Prop. & Cas. Co.,* 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160.

[31] The plaintiffs in the present case filed an amicus brief in *Neiman,* as did the defendants, PIC and the Fund. The plaintiffs originally filed their amicus brief in *Timm v. YMCA,* Case No. 99–0195. *Timm* presented the same issue for review as *Neiman* and certification was accepted by this court in September 1999. The parties in *Timm,* however, reached a settlement, and the case was voluntarily dismissed in February 2000. The

being considered by this court, nobody, including the plaintiffs in this case, asked that a ruling on retroactivity be limited to the facts presented in the *Neiman* case. Indeed, in their amicus brief in *Neiman,* the plaintiffs in the present case argued that the facts of their own case "provide additional reasons and context for why this Court should uphold the Act in [*Neiman*] and in all other cases to which the Act applies."[32]

¶ 32. The plaintiffs contend that our knowledge of other pending cases presenting the same issue does not compel the conclusion that *Neiman* declared the retroactive increase of the cap invalid in all cases. While a case accepted on bypass will not always resolve every pending case presenting the same legal issue, the court of appeals correctly surmised that *Neiman*'s broad language was intended to encompass all parties affected by the retroactive increase of the cap adopted by 1997 Wis. Act 89.[33] It would confuse our role as a court of last resort for this court not to encompass all parties af-

plaintiffs' amicus brief, along with others, was then transferred to *Neiman* after that case was subsequently granted review.

[32] Brief and Appendix of Amicus Curiae Barbara, Roger, Mitchell and Russell Schultz at 13, *Neiman v. Am. Nat'l Prop. & Cas. Co.*, 2000 WI 83, 236 Wis. 2d 411, 613 N.W.2d 160; *see supra* note 31.

[33] The court of appeals said in its decision in the present case:

> We doubt that the supreme court accepted the case [on bypass] solely to determine the rights of litigants who had one particular type of insurance coverage. Instead, we conclude that the court's references to "other defendants in tort actions," and "other insurers and insureds," and the court's balancing of broadly applicable private interests demonstrate that the court viewed the case as a facial challenge to the statute.

*Schultz,* 249 Wis. 2d 317, ¶ 19 (citations omitted).

fected by the retroactive increase of the cap on damages when the decision does not expressly delineate the limits of the holding.[34]

¶ 33. Finally, the plaintiffs argue that Wis. Stat. § 990.001(11) requires a contrary result. Section 990.001(11) is a legislatively adopted canon of statutory interpretation relating to severability. The canon provides that an unconstitutional provision or an unconstitutional application of a statute may be severed from the constitutional provisions or constitutional applications. Section 990.001(11) reads as follows:

> The provisions of the statutes are severable. The provisions of any session law are severable. If any provision of the statutes or of a session law is invalid, or if the application of either to any person or circumstance is invalid, such invalidity shall not affect other provisions or applications which can be given effect without the invalid provision or application.

¶ 34. The plaintiffs argue that instead of severing the retroactive increase of the cap on damages, we should sever only those retroactive applications for which the *Martin* balancing test concludes that due process is violated. The plaintiffs' argument rests on a flawed premise. The plaintiffs assume that *Neiman* invalidated the retroactive increase of the cap on damages only on the facts of that case. Yet as discussed above, *Neiman* invalidated the retroactive increase of

---

[34] Because *Neiman* addressed an injury stemming from an automobile accident, the plaintiffs also argue that the court should not extend *Neiman* to medical malpractice cases, where greater deference is due to legislative enactments. This claim is without merit. *Neiman* struck down the retroactive increase in the damage cap in all wrongful death cases regardless of the underlying cause of death. Moreover, nothing in the language of Wis. Stat. § 895.04(4) distinguishes medical malpractice cases from other types of wrongful death claims.

the cap on damages enacted in 1997 Wis. Act 89 in all cases.

¶ 35. Thus, the court of appeals properly followed Wis. Stat. § 990.001(11) by striking only the retroactive provision of 1997 Wis. Act 89 and leaving in place prospective increases of the cap on damages for the loss of society and companionship claims in wrongful death cases.

¶ 36. We conclude that the court of appeals properly held that *Neiman* invalidated the retroactive increase of the cap on damages adopted by 1997 Wis. Act 89 for loss of society and companionship in a wrongful death suit generally, including the present case. The only question remaining is whether there is any reason to overturn *Neiman.*

■

¶ 37. Ordinarily, of course, we adhere to the principle of stare decisis.[35] Fidelity to precedent ensures that existing law will not be abandoned lightly.[36] When existing law "is open to revision in every case, 'deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results.' "[37] Consequently, this court has held that "any departure from the doctrine of stare decisis demands special justification."[38]

---

[35] *State v. Outagamie County Bd. of Adjustment,* 2001 WI 78, ¶ 29, 244 Wis. 2d 613, 628 N.W.2d 376.

[36] *State v. Stevens,* 181 Wis. 2d 410, 441, 511 N.W.2d 591 (1994) (Abrahamson, J., concurring), *cert. denied,* 515 U.S. 1102 (1995).

[37] *Outagamie County Bd. of Adjustment,* 244 Wis. 2d 613, ¶ 29 (quoting *Citizens Util. Bd. v. Klauser,* 194 Wis. 2d 484, 513, 534 N.W.2d 608 (1995) (Abrahamson, J., dissenting)).

[38] *State v. Ferron,* 219 Wis. 2d 481, 504, 579 N.W.2d 654 (1998) (quoting *Ariz. v. Rumsey,* 467 U.S. 203, 212 (1984)).

¶ 38. Although the result in *Neiman* is harsh for families of victims and contrary to the express direction of the legislature, the plaintiffs do not provide any justification, in this case, for overturning the *Neiman* decision. Their case does not introduce evidence of any changes in the law that might undermine the rationale behind the *Neiman* decision; it does not show how *Neiman* renders the law incoherent or inconsistent.[39] Plaintiffs merely present a variation of the facts expressly discussed in *Neiman* and suggest that the court improperly weighed the public and private interests under the *Martin* balancing test. However, no change in the law is justified simply by a "case with more egregious facts."[40] Furthermore, as discussed above, these facts were already before the court when it decided *Neiman*.

¶ 39. In sum, the court affirms the decision of the court of appeals. We conclude, as did the court of appeals, that the *Neiman* decision governs this case. The retroactive increase of the cap on damages for the loss of society and companionship in wrongful death cases enacted by 1997 Wis. Act 89 is unconstitutional. It is unnecessary to apply the *Martin* balancing test anew

---

[39] *See State v. Stevens,* 181 Wis. 2d 410, 442, 511 N.W.2d 591 (1994) (Abrahamson, J., concurring), *cert. denied,* 515 U.S. 1102 (1995) ("Justification for departure from precedent could include changes or developments in the law that undermine the rationale behind a decision; the need to make a decision correspond to newly ascertained facts; or a showing that the precedent has become detrimental to coherence and consistency in the law.").

[40] *Stevens,* 181 Wis. 2d at 443 (Abrahamson, J., concurring) (quoting *Welch v. State Farm Mut. Auto. Ins. Co.,* 122 Wis. 2d 172, 182, 361 N.W.2d 680 (1985) (Steinmetz, J., dissenting)).

to the particular facts of every case challenging the constitutionality of the retroactive increase of the cap.

*By the Court.*—The decision of the court of appeals is affirmed.