ANN WALSH BRADLEY, J. (dissenting).
¶59 A mere three years ago, this court decided the very issue that it is reconsidering today. In Coyne v. Walker, a majority of the court determined that 2011 Act 21 (Act 21) is "unconstitutional and therefore void as applied to the Superintendent of Public Instruction and his subordinates." 2016 WI 38, ¶4, 368 Wis. 2d 444, 879 N.W.2d 520.
¶60 Yet despite this clear mandate, here we are again. A provision that does the very same thing as Act 21 is back before the court. It comes to us through a new enactment (2017 Wis. Act 57) and with a catchy new name (the REINS Act), but the substance is identical.[1]
¶61 And why are we here again? At oral argument, counsel for the petitioners was asked, "you wouldn't be here asking a supreme court of the state of *588 Wisconsin to overturn a decision that it just made two years ago if it were the same court, would you?" In response, counsel acknowledged, "any lawyer has to make strategic decisions about what is likely to be successful." Indeed.
¶62 Although nothing in our Constitution has changed since Coyne was decided, what has changed is the membership of the court. This time around, a new majority of this court does an about-face and now concludes that the substance of Act 57 is constitutional. To reach this conclusion, it throws the doctrine of stare decisis out the window.[2]
*618 ¶63 Not only is the majority opinion doctrinally erroneous, it is also analytically unpersuasive. As Justice Abrahamson wrote in Coyne: "rulemaking is part of the 'supervision of public instruction,' which Article X, Section 1 vests in the superintendent."[3]
*589 368 Wis. 2d 444, ¶85, 879 N.W.2d 520 (Abrahamson, J., concurring). Act 21 is unconstitutional "because it grants the governor (and the Secretary of the Department of Administration) an unchecked veto power over the superintendent's rulemaking powers, thereby making the superintendent subordinate to the governor (and the Secretary) in the supervision of public instruction." Id. Act 57 suffers the same infirmity.
¶64 Because the majority disregards binding precedent and arrives at a result that unconstitutionally transfers the vested authority of the Superintendent of Public Instruction to the governor, I respectfully dissent.
I
¶65 This case arises from a petition for original action filed by the Petitioners against the Superintendent of Public Instruction (SPI) and the Department of Public Instruction (DPI). Majority op., ¶1. The Petitioners seek a declaration that the SPI and DPI must comply with 2017 Wis. Act 57's (Act 57) requirement that they receive the governor's approval prior to drafting or promulgating an administrative rule. Id. In response, the SPI and DPI argue, consistent with Coyne, 368 Wis. 2d 444, 879 N.W.2d 520, that such a requirement is an unconstitutional usurpation of the SPI's vested constitutional authority. Id.
¶66 Relegating the discussion of stare decisis to a footnote, the majority states that it "consider[ed] whether the doctrine of stare decisis should be employed in the case before us." Id., ¶8 n.5 (citation omitted). It acknowledges that Coyne "addressed some of the same statutory provisions and constitutional concerns we examine today ...." Id.
*590 ¶67 However, it declines to apply the doctrine of stare decisis, reasoning that "stare decisis does not require us to retain constitutional interpretations that were objectively wrong when made ... because such interpretations are unsound in principle." Id. (citations omitted). Further, it asserts that it is not required to follow Coyne because "our mandate in Coyne arises from a lead opinion, joined by one justice, a two-justice concurrence, and a one-justice concurrence." Id. Unsurprisingly, the majority ultimately grants the petitioners' requested relief. Id., ¶2.
II
¶68 Neither of the majority's proffered rationales for departing from stare decisis is persuasive. Stare decisis is fundamental to the rule of law. Johnson Controls, Inc. v. Emp'rs Ins. of Wausau, 2003 WI 108, ¶94, 264 Wis. 2d 60, 665 N.W.2d 257. Indeed, *619 "[t]his court follows the doctrine of stare decisis scrupulously because of our abiding respect for the rule of law." Id.
¶69 "Fidelity to precedent ensures that existing law will not be abandoned lightly. When existing law is open to revision in every case, deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results." Schultz v. Natwick, 2002 WI 125, ¶37, 257 Wis. 2d 19, 653 N.W.2d 266 (internal quotation and citations omitted).
¶70 "No change in the law is justified by a change in the membership of the court ...." Bartholomew v. Wis. Patients Comp. Fund, 2006 WI 91, ¶32, 293 Wis. 2d 38, 717 N.W.2d 216 (citation omitted). Adherence to precedent fosters confidence in the reliability of court decisions, promotes consistent development *591 of legal principles, and contributes to the actual and perceived integrity of the Wisconsin judiciary. See Johnson Controls, 264 Wis. 2d 60, ¶95, 665 N.W.2d 257.
¶71 Throwing caution to the wind, the majority disregards the principles that fundamentally underlie our legal system. It contends that Coyne was "objectively wrong." Majority op., ¶8 n.6. Further, it ascribes significance to the fact that the majority in Coyne consisted of three separate opinions. Id.
¶72 Apparently, "objectively wrong" is defined by the majority as what it subjectively thinks is wrong. The majority provides no explanation for the assertion that Coyne was "objectively wrong" other than that it disagrees with it.
¶73 Additionally, the split nature of the Coyne opinion is of no import. The mandate of Coyne was clear despite the fractured nature of the opinions. Although the four justices in the majority subscribed to differing rationales, they agreed on the essential conclusion: "We hold that Act 21 is unconstitutional and therefore void as applied to the Superintendent of Public Instruction and his subordinates." Coyne, 368 Wis. 2d 444, ¶4, 879 N.W.2d 520.[4] Full stop.
*592 ¶74 Such a decision creates no uncertainty and fosters no confusion. Act 57, at issue here, does not differ in any material respect from Act 21.
¶75 Accordingly, I conclude that the doctrine of stare decisis applies here with full force. The rule of law and the "actual and perceived integrity of the judicial process" demand it. See Johnson Controls, 264 Wis. 2d 60, ¶95, 665 N.W.2d 257.
III
¶76 The majority errs further in its substantive analysis of the separation of powers issues this case presents. I joined Justice Abrahamson's concurrence in Coyne, and I believe that it remains the correct analysis here.
¶77 In Coyne, Justice Abrahamson's concurrence determined that 2011 Wis. Act 21, which is in all material respects identical to Act 57, "unconstitutionally infringes *620 on the 'supervision of public instruction' vested in the superintendent by Article X, Section 1 of the Wisconsin Constitution." Coyne, 368 Wis. 2d 444, ¶93, 879 N.W.2d 520 (Abrahamson, J., concurring). It reached this conclusion because Act 21 "gives 'equal or superior authority' [over the supervision of public instruction] to ... '[an]other officer.' " Id., ¶100 (Abrahamson, J., concurring) (citing Thompson v. Craney, 199 Wis. 2d 674, 699, 546 N.W.2d 123 (1996) ).[5] The same is true of Act 57.
¶78 Such a conclusion is supported by significant constitutional history as has been previously set *593 forth by this court in Thompson and Coyne. See Coyne, 368 Wis. 2d 444, ¶98, 879 N.W.2d 520 (Abrahamson, J., concurring); Thompson, 199 Wis. 2d at 685-98, 546 N.W.2d 123. "The debates at the 1846 and 1847-48 Wisconsin constitutional conventions show that the drafters of the Wisconsin Constitution intended the public schools to be under the supervision of the SPI, and that the SPI was to be an elected, not appointed, public official." Thompson, 199 Wis. 2d at 685, 546 N.W.2d 123.
¶79 Delegates to the constitutional conventions echoed two consistent themes: "first, that the system of education required uniformity[, and] second, that the SPI was to provide this uniformity in an active manner by implementing the system of education." Id. at 688-89, 546 N.W.2d 123. Accordingly, the framers "considered and explicitly rejected a proposal to select a superintendent by gubernatorial appointment and a proposal that would have allowed the legislature to vest 'the supervision of public instruction ... in such officers as shall hereafter be created by law.' " Coyne, 368 Wis. 2d 444, ¶98, 879 N.W.2d 520 (Abrahamson, J., concurring) (citing Thompson, 199 Wis. 2d at 685-86, 546 N.W.2d 123 ). "Simply put, the framers viewed the superintendent as 'indispensable,' 'the foundation, the life of progressive education' who 'alone c[ould] give uniformity, energy, and efficiency to the system.' " Id. (citing Journal of the Convention, reprinted in The Convention of 1846, at 568, 570-71 (Milo M. Quaife ed. 1919)).
¶80 Consistent with this history and the determination of the Thompson court, the concurrence concluded that "rulemaking is a supervisory power of the superintendent and that 2011 Wis. Act 21 unconstitutionally *594 gives the governor and the secretary of the Department of Administration the unchecked authority to block rulemaking by the superintendent." Coyne, 368 Wis. 2d 444, ¶99, 879 N.W.2d 520 (Abrahamson, J., concurring). Act 57 does exactly the same thing. Thus, the analysis presented in Justice Abrahamson's concurrence in Coyne is equally applicable to the issue in this case. Just as Act 21 was unconstitutional three years ago, Act 57 remains unconstitutional today.
¶81 For the foregoing reasons, I respectfully dissent.
¶82 I am authorized to state that Justice REBECCA FRANK DALLET joins this dissent.

I agree with the majority that the issues in this case do not require an "exposition"-"dogmatic" or otherwise-of the constitutional legitimacy of the administrative state. Majority op., ¶19. I write in response to the majority's endorsement of the necessity of delegating legislative power to administrative agencies. See majority op., ¶17.

Charles J. Cooper, Confronting the Administrative State, 25 National Affairs 96, 96 (Fall 2015).

Phillip Hamburger, Is Administrative Law Unlawful? 429 (2014).

The legislature codified this principle in Wis. Stat. § 227.57 (11) ("Upon review of an agency action or decision, the court shall accord no deference to the agency's interpretation of law.").

Because the people delegate power through constitutional grants, "when Congress purports to give its legislative power to the executive, the question is not whether the principal can delegate the power, but whether the agent can subdelegate it." Hamburger, supra ¶5 note 2, at 377. "[T]he agent ordinarily cannot subdelegate the power to a sub-agent, as this runs counter to the apparent intent of the principal." Id. at 380.